Lillian TRATTNER et al., Plaintiffs,

v.

AMERICAN FLETCHER MORTGAGE INVESTORS et al., Defendants.

No. IP 76–117–C.

United States District Court,
S. D. Indiana, Indianapolis Division.

Nov. 1, 1976.

M. Daniel Friedland, Indianapolis, Ind., for plaintiffs.

Charles W. Boand, Chicago, Ill., James A. McDermott and James A. Strain, Barnes, Hickam, Pantzer & Boyd, Theodore R. Boehm, Norman P. Rowe, and James H. Ham, III, Baker & Daniels, and Donald F. Elliott, Jr., Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for defendants.

## ORDER ON DETERMINATION OF CLASS ACTION

STECKLER, Chief Judge.

In this action brought purportedly as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure the plaintiffs, Robert Trattner, Lillian Trattner, and Stephen Trattner, seek damages from various defendants for alleged violations of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5. The defendants in the action have moved pursuant to Fed.R.Civ.P. 23(c)(1) for a determination as to whether this action may be maintained as a class action.

For the reasons stated below and particularly in view of the changing circumstances surrounding the claims of the prospective class members, this Court has determined, on the present state of the record, that this action may not be maintained as a class action.

The plaintiffs in this action are Robert Trattner, Lillian Trattner, and Stephen Trattner. Robert and Lillian Trattner are husband and wife; Stephen Trattner is their son. The plaintiffs were the holders of certain securities in American Fletcher Mortgage Investors (AFMI) which securities were purchased in August of 1974. Lillian and Stephen Trattner purchased shares in AFMI, a real estate investment trust, while Robert Trattner purchased warrants of the trust.

Plaintiff Robert Trattner is an experienced investor and businessman. He has had formal training in securities analysis and was formerly licensed by the National Association of Securities Dealers and the State of Indiana. He maintains accounts with a number of brokerage houses and characterizes his investment goal as "appreciation." He purchased 1,000 AFMI warrants at $11/16 on August 7, 1974. At that time AFMI was being traded on the American Stock Exchange for $13; the warrants were exercisable at $25.

Lillian Trattner purchased 300 shares of AFMI on August 20, 1974, at $14 per share. She purchased the securities on the recommendation of her husband inasmuch as her investment goal was "income" and AFMI had paid a substantial dividend in the quarter prior to her purchase.

Stephen Trattner is a practicing attorney who resides in the Washington, D.C. area. He has had some professional experience in securities matters. Upon the recommendation of his father, Stephen Trattner purchased 1,000 shares of AFMI—300 at $13 and 700 at $12¾.

There are essentially five defendants or groups thereof. They are (1) American Fletcher Mortgage Investors, a real estate investment trust organized under the laws of Massachusetts as a business trust, (2) American Fletcher Mortgage Company, the manager of AFMI under a contract with AFMI, (3) American Fletcher Corporation, a one bank holding company, (4) Arthur Andersen & Co., a certified public accounting firm,[1] and (5) fifteen individual defendants, all of whom are trustees of AFMI.

The plaintiffs seek to represent the class consisting of all persons who purchased shares or warrants in the trust from December 1, 1973 through February 25, 1976 (the class period). The plaintiffs contend that the defendants violated Rule 10b–5 in that the defendants had knowledge as early as December 1, 1973, that massive portions of AFMI's loan portfolio were in jeopardy. Plaintiffs further allege that the defendants intentionally deceived the plaintiffs and the class they seek to represent by failing to adequately disclose the information which the defendants allegedly had concerning the deteriorating status of AFMI's loan portfolio. On account of these inadequate disclosures plaintiffs claim they were induced to purchase shares and warrants in AFMI.

---

1. The parties have stipulated the dismissal of the action as against the defendant Arthur Andersen & Co.

AFMI commenced operations in early 1970. Its business consisted primarily of investing in short-term land acquisition or construction and development first mortgage loans. The heaviest concentration of AFMI loans was in the midwestern states, but other investments were made with respect to properties in the eastern, southeastern, and southwest states. In order to qualify for certain tax advantages as a real estate investment trust (REIT) under the Internal Revenue Code, in particular, 26 U.S.C. §§ 856–858, AFMI was required to concentrate the preponderance of its investments in real estate or mortgage loans. AFMI's investment portfolio was thus subject to the pressures of the real estate and construction industries in addition to the more generalized pressures faced by the overall national economy.

Throughout the alleged class period, December 1, 1973 through February 25, 1976, there were substantial and frequent fluctuations in the market factors and economic conditions directly affecting the real estate investment business. Due to inflation the index of construction costs increased continuously throughout the period. The prime lending rate of leading commercial banks increased substantially during the class period; consequently the interest rates paid by land developers on construction and development loans increased substantially during the class period.

The changes in economic conditions were reflected in changes in the market price of shares in AFMI. On December 1, 1973, the market price of AFMI on the American Stock Exchange reached a high of $24 per share. Thirteen months later the market price of AFMI bottomed out at $2.00 per share. Throughout the calendar year 1975 the price of AFMI never exceeded $5¼. On February 23, 1976, the day before trading in AFMI on the American Stock Exchange was halted, the closing price of AFMI was $4¼.

Also relevant to this action is the market history of an AFMI warrant issue. The holder of such a warrant was entitled to purchase one share of AFMI at an exercise price of $25. The market price of AFMI shares never equalled or exceeded the exercise price during the class period. The market price of the warrants remained below $2.50 throughout the period and never rose above $1 after June, 1974. The original expiration date of the warrants was January 31, 1975, but in July of 1974, AFMI extended the warrants to February 28, 1978.

On January 1, 1974, AFMI's investment portfolio included approximately 140 funded real estate investments in a face amount in excess of $116 million; a year later the portfolio consisted of approximately 126 funded investments in a face amount exceeding $117 million. On January 31, 1976, the portfolio contained approximately 105 investments in a face amount in excess of $96 million.

AFMI was experiencing many difficulties with its portfolio throughout the class period. The percentage of AFMI's mortgage debtors who were current in their interest payments decreased substantially. In order to compensate for the problem loans, AFMI increased its loan loss reserves periodically throughout the class period.

Through its Board of Trustees or Executive Committee AFMI issued 59 public statements during the class period. Of the 59 statements, 47 dealt specifically with AFMI's problem loans or its loan loss reserves. Meetings of the Board or Executive Committee took place on 34 separate occasions during the 27-month class period.

It is in the light of this factual background that the Court must consider the propriety of maintaining this Rule 10b–5 action as a class action. The plaintiffs, seeking to represent the purported class, have the burden of establishing the four prerequisites to the maintenance of a class action found in Rule 23(a) of the Federal Rules of Civil Procedure. Therefore, the plaintiffs must establish that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the repre-

sentative parties will fairly and adequately protect the interests of the class. The plaintiffs must also demonstrate that their action is maintainable as a class action under one of the three categories in Rule 23(b).

Inasmuch as AFMI was traded on the American Stock Exchange, the Court will assume that the purported class is too numerous for joinder of all members to be practicable. The Court also concludes that there are questions of law or fact common to the class. Clearly the claim of each class member would, in some way, be dependent upon the resolution of factual disputes concerning the conduct or prescience of the trustees and AFMI in regard to the problem loans, loan loss reserves, and the public statements.

The "typicality" requirement, Fed.R.Civ.P. 23(a)(3), is also satisfied, to a sufficient but not compelling extent, by the fact that the Trattners' claims are basically founded upon the same legal and remedial theories as the claims of the class members. *Gonzales v. Cassidy,* 474 F.2d 67, 71 n. 7 (5th Cir. 1973). Additionally, the interests of the named plaintiffs appear to be coextensive with the interests of the class. Thus the representatives' interests must be deemed to be free of conflict with the interests of the class. There are, however, marked differences between the claims of the Trattners and the claims which the remainder of the class could assert. This fact cuts against a finding of "typicality" but is more appropriately considered in connection with Rule 23(b)(3).

As a final matter under Rule 23(a), the Court concludes that the plaintiffs would fairly and adequately protect the interests of the class. The plaintiffs thus meet the four requirements of Rule 23(a), and if the action fits one of the three categories in Rule 23(b) it would be maintainable as a class action.

The action is clearly not maintainable as a class action under Rule 23(b)(1) because the members of the purported class would not be prejudiced nor would the defendants be subject to inconsistent adjudications were the case not certified for class adjudication. Because plaintiffs are not seeking declaratory or injunctive relief, Rule 23(b)(2) is not applicable.

Therefore, if this action is to be maintained as a class action the Court must find that the common questions of law or fact predominate over any questions affecting only individual class members and that a class action is superior to other available methods of adjudication. Fed.R.Civ.P. 23(b)(3). Because there is no single event which can be isolated as the basis for potential 10b–5 liability, the plaintiffs rely on a "common and continuing course of conduct" theory for the imposition of liability. In such case there are differing circumstances and different facts which must be proved with respect to the claims of the various members of the proposed class. Although some "common and continuing course of conduct" cases might be appropriate for class resolution, this case is not one of them. Here the proposed class period consisted of twenty-seven months. During that period the record reveals that substantial changes took place in the American economy in that the prime rate rose considerably and the index of construction costs significantly increased. It is beyond dispute that such economic factors have a significant effect on the securities market. The marked differences in the national economy during the class period would require the resolution of many factual questions which would not be before the Court were the case not to proceed on a class basis.

The changing national economic facts over the twenty-seven month proposed class period and the different legal issues which ensue from Robert Trattner's sophistication in securities analysis and Lillian and Stephen Trattner's reliance thereon obliterate the commonality which the Court found to satisfy the requirements of Rule 23(a)(2). The lack of commonality thus requires the Court to conclude that the action may not proceed as a class action under Rule 23(b)(3). Stated simply, the common questions do not predominate over

the questions affecting only individual members of the proposed class.

Accordingly, the Court having considered the evidence and legal authorities relevant to the question of whether this action should be maintained as a class action, concludes that this action should not be so maintained.

By reason of the foregoing IT IS HEREBY ORDERED that this action may not be maintained as a class action.

Ruling on the motions to dismiss the action as against the remaining defendants is reserved for further consideration.