Blanche TURNER, Plaintiff,

v.

FIRST WISCONSIN MORTGAGE TRUST, First Wisconsin National Bank Holding Company, First Wisconsin Mortgage Co. and James E. Lieck, Defendants.

Civ. A. No. 75–C–235.

United States District Court, E. D. Wisconsin.

Aug. 4, 1978.

Lowell E. Sachnoff and Franklin G. Allen, Chicago, Ill., for plaintiff; Sachnoff, Schrager, Jones & Weaver, Ltd., Chicago, Ill., and David J. Schoetz, Burke & Schoetz, Milwaukee, Wis., of counsel.

Laurence C. Hammond, Jr., Milwaukee, Wis. and Bernard J. Nussbaum and Otis H. Halleen, Chicago, Ill., for defendant First Wisconsin Mortgage Trust.

Joseph DuCoeur, Tefft W. Smith and Howard J. Swibel, Kirkland & Ellis, Chicago, Ill., for proposed additional defendants Robert W. Baird & Co. Inc., Goldman Sachs & Co., and Robert A. Uihlein, Jr.

David E. Beckwith, Maurice J. McSweeney, Allen W. Williams, Jr., and Robert A. DuPuy, Milwaukee, Wis. and H. Templeton Brown, Ray H. Greenblatt, Lee N. Abrams, and Franklin P. Auwarter, Chicago, Ill., for defendants First Wisconsin Corp., First Wisconsin Mortgage Co. and First Wisconsin National Bank; Foley & Lardner, Milwaukee, Wis. and Mayer, Brown & Platt, Chicago, Ill., of counsel.

REYNOLDS, Chief Judge.

## DECISION AND ORDER

This suit is an action for damages and injunctive relief arising out of the allegedly fraudulent course of conduct engaged in by the defendants from December 1971 through April 1974, which plaintiff alleges was violative of various provisions of the Securities Act of 1933 (the "1933 Act") and the Securities Exchange Act of 1934 (the "1934 Act"). Jurisdiction is alleged pursuant to § 27 of the 1934 Act, 28 U.S.C. § 78aa, and § 22 of the 1933 Act, 15 U.S.C. § 77v, with pendent jurisdiction over the state law claims. The action was originally commenced in the United States District Court for the Southern District of New York, on March 17, 1975, and was transferred by stipulation of the parties to the United States District Court for the Eastern District of Wisconsin, the Honorable Myron L. Gordon, judge presiding, on April 28, 1975. It was subsequently transferred to this branch of the court.

There are presently five motions before the Court: (1) plaintiff's motion for leave to file a first amended complaint and to add parties defendant, filed October 29, 1975; (2) plaintiff's motion for leave to add the First Wisconsin National Bank of Milwaukee as an additional party defendant, filed March 23, 1976; (3) plaintiff's motion for class certification, filed September 11, 1975; (4) plaintiff's motion for leave to file a revised first amended complaint and to add parties plaintiff, filed October 4, 1976; and (5) plaintiff's motion for a protective order, filed March 22, 1976. The motions will be discussed separately below. Since there are now three complaints in the record, for purposes of clarity the Court notes that in the remainder of this decision, unless otherwise specifically stated, it is referring to the first amended complaint.

1. *Plaintiff's Motion for Leave to File a First Amended Complaint and to Add Parties Defendant, Filed October 29, 1975*

The original complaint was brought by the plaintiff Blanche Turner to enforce liabilities created under § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and under Rule 10b-5 of the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5. The defendants named therein are the First Wisconsin Mortgage Trust ("FWMT" or the "Trust"), the First Wisconsin Mortgage Company ("FWMC"), James E. Liek (improperly named in the complaint as James E. Lieck), and the First Wisconsin Corporation ("FWC") (improperly named in the complaint as the First Wisconsin National Bank Holding Company). The action was brought on behalf of all purchasers of shares of the FWMT from December 1971 to the date of filing of the complaint which was March 17, 1975. Plaintiff alleges that the defendants established the FWMT and caused its shares to be issued to the public for the benefit of the other defendants, knowing that the FWMT lacked an adequate and competent staff, and thereafter that they engaged in a fraudulent scheme to induce members of the public to purchase

shares of the FWMT by falsifying its financial reports by making untrue statements of material facts or omitting to state material facts while making and failing adequately to review a series of improvident loans.

The proposed first amended complaint, which was filed October 29, 1975, and which is discussed hereinafter, contains numerous changes, although it remains a claim for relief arising out of the alleged fraudulent course of conduct engaged in by defendants to artificially inflate the value of shares of the FWMT and thereby to induce the members of plaintiff's class to purchase shares of the Trust which, absent the fraud engaged in by the defendants, they would not have purchased.

Plaintiff seeks, first, to amend the class which she claims to represent to include all persons who purchased shares of the trust from the initial public offering in December 1971 through April 1974. The plaintiff herself purchased 100 shares on August 22, 1972 (see pp. 13, 16, 21–22 of Turner deposition taken December 18, 1975), and the present court record indicates that she still owns those shares.

The plaintiff also seeks to add five defendants to this action. They are: Hal C. Kuehl, who until March 1975 was the chairman of the Board of Trustees of the FWMT, the president of the First Wisconsin National Bank of Milwaukee (the "Bank"), and the executive vice-president of the FWC; Max H. Karl, who similarly until March 1975 was an officer of the FWMT, the Bank, and the FWC; Robert A. Uihlein, Jr., who was also until March 1975 an officer of the FWMT, of the Bank, and of the FWC; Robert W. Baird & Co. Incorporated ("Baird"), an investment banking and brokerage company which managed the underwriting of the public offering of Trust shares in December 1971 and on March 1, 1973; and Goldman Sachs & Co., a registered broker-dealer which along with Baird was engaged in managing the underwriting of the 1971 and 1973 public offerings.

The plaintiff claims that the Trust was created by the FWC effective November 3, 1971; that it engaged primarily in short term construction, development, and land acquisition loans in which the Bank was the lead lender; that the Bank is a subsidiary of the FWC and competes with the Trust for loans; that the FWMC is controlled by the FWC and the Bank, staffed by Bank employees, and is an investment advisor to the Bank and to the Trust; and that the FWC and the Bank at all relevant times controlled the management and activities of the Trust and of the FWMC. The plaintiff also sets out at length the general conduct which she claims constituted deception and fraud practiced by the defendants in connection with the purchase and sale of shares of the Trust. Said conduct includes: inadequate and incompetent staffing of the Trust; making of false and misleading financial statements to induce purchase of shares of the Trust; causing the Trust to borrow large sums from the Bank and from other affiliates of the FWC on disadvantageous terms; causing false statements to be made in the December 1971 prospectus, to wit, that the trustees of the Trust would exercise independent judgment in regard to loans proposed by the FWMC, that the FWMC would not control the Trust and would instead be subject to the supervision of the Trust, and that the Trust would require commitments for long term financing before making construction loans; causing the February 1973 prospectus, the 10-K forms, the annual reports, and other statements to contain false and inflated statements of the value of the Trust assets, whereas in fact the defendants caused the Trust to accrue income from unsound loans which should have been in nonaccrual status, caused the Trust to record fees for commitments to lend when received rather than over the term of the commitment, and caused the Trust to carry inadequate amounts in allowance for losses. Plaintiff asserts that as a result of the aforesaid conduct, the market value of the Trust shares has declined drastically since the spring of 1973. She claims to have learned of said course of conduct initially at the annual meeting of the shareholders held in December 1974 when certain shareholders threatened publicly to sue the Trust.

The proposed first amended complaint contains seven separate counts. Count I charges that the course of conduct engaged in by the defendants during the relevant period resulted in the dissemination of untrue statements of material facts and omissions to state other material facts, in violation of § 10b of the 1934 Act and Rule 10b–5. 15 U.S.C. § 78j(b) provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\*     \*     \*     \*     \*     \*

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rule 10b–5, 17 C.F.R. § 240.10b–5, provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interestate [sic] commerce, or of the mails or of any facility of any national securities exchange,

"(a) To employ any device, scheme, or artifice to defraud,

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

"in connection with the purchase or sale of any security."

Counts II and III of the proposed first amended complaint allege violations by the defendants of § 11 of the 1933 Act due to the filing of false registration statements with the SEC in connection with the public offerings of stock in December 1971 and March 1973, respectively. Section 11, 15 U.S.C. § 77k, authorizes suit by any person who acquired a security when the registration statement of such security contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein. Count IV alleges a violation by defendants of § 12(2) of the 1933 Act, 15 U.S.C. § 77l, which provides in part:

"Any person who—

\*     \*     \*     \*     \*     \*

"(2) offers or sells a security \* \* \* by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

"shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."

Counts V through VII of the proposed first amended complaint state claims arising under the common law for fraud, negligence, and breach of fiduciary duty.

The defendants named in the original complaint have not objected to the filing of the proposed first amended complaint. As to those defendants, therefore, plaintiff's motion for leave to amend her complaint will be granted. With regard to the five defendants whom the plaintiff seeks to name in her first amended complaint, how-

ever, the Court finds that the relevant statutes of limitations had run as to those defendants by October 29, 1975, when the motion for leave to amend was filed. Consequently, insofar as plaintiff seeks leave to amend to add Hal C. Kuehl, Max H. Kuehl, Max H. Karl, Robert A. Uihlein, Jr., Robert W. Baird & Co. Incorporated, and Goldman Sachs & Co. as parties defendant, the motion will be denied. Because the Court decides that the relevant statutes of limitations had run, it need not consider the other points raised by the defendants in opposition to plaintiff's motion.

■ Plaintiff's claims arising under §§ 11 and 12(2) of the 1933 Act are governed by the statute of limitations set forth in 15 U.S.C. § 77m, which provides:

"No action shall be maintained to enforce any liability created under section 77k or 77*l*(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence * * *. In no event shall any such action be brought to enforce a liability created under section 77k or 77*l*(1) of this title more than three years after the security was bona fide offered to the public, or under section 77*l*(2) of this title more than three years after the sale."

Her claim under § 10(b) of the 1934 Act and Rule 10b–5 is governed by the most closely analogous state statute of limitations,[1] which in this case is the Wisconsin "Blue Sky" law, § 551.59(5), Wis.Stats. (1971), which provides:

"(5) No action shall be maintained under this section unless commenced before the expiration of 3 years after the act or transaction constituting the violation or the expiration of one year after the discovery of the facts constituting the violation, whichever first expires * * *."

See *Kramer v. Loewi & Co., Inc.*, 357 F.Supp. 83, 87 (E.D.Wis.1973). Plaintiff argues that the holding in *Kramer* is incorrect in view of the Supreme Court's decision in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), and that the longer period of limitation set forth in § 893.19(7), Wis.Stats. (1973), which governs fraud actions, should apply to Count 1 of the first amended complaint. In *LaRosa Building Corporation v. The Equitable Life Assurance Society of the United States*, 542 F.2d 990 (7th Cir. 1976), decided subsequent to *Ernst & Ernst*, the United States Court of Appeals for the Seventh Circuit upheld its earlier decision in *Parrent v. Midwest Rug Mills, Inc.*, 455 F.2d 123 (7th Cir. 1972), wherein it held that a district court should apply the state security rather than the state fraud statute of limitations to actions brought pursuant to § 10(b) of the 1934 Act. It did so for the reason, among others, that the district court should apply the state statute of limitations which most closely tracks the express limitation periods which are set out in the federal securities acts. 542 F.2d at 992. This Court is bound by the decision in *LaRosa* and, therefore, holds that § 551.59(5), Wis. Stats., governs the plaintiff's claim in Count I. See also *Colonial Bank & Trust Co. v. American Bankshares Corporation*, 439 F.Supp. 797 (E.D.Wis.1977).

■■ Plaintiff concedes that if the federal claims are barred by the statutes of limitations, she cannot proceed with the pendent state claims. See *United Mine Workers v. Gibbs*, 353 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1965); *Hupp v. Gray*, 500 F.2d 993 (7th Cir. 1974). She further concedes that because she seeks to add parties defendant to her action, the relevant

1. On May 1, 1978, the plaintiff filed another supplemental brief. In it she suggests that the appropriate statute of limitations to apply to the § 10(b) action is the New York six-year fraud statute of limitations and not the Wisconsin fraud or securities statute. Since the other parties have not had an opportunity to present their views on plaintiff's position, the Court will assume for purposes of this decision, as all parties had done up to May 1, 1978, that one of the Wisconsin statutes applies. The net result is the same regardless of the statute the Court applies, because the Court finds below that plaintiff has failed in Count I of the proposed amended complaint to state a cause of action and, therefore, that that count must be dismissed.

date for consideration of the applicability of the statutes of limitations is the date on which the motion for leave to amend the complaint was filed, i. e., October 29, 1975, and not the date on which the original complaint was filed. See 3 Moore's Federal Practice ¶ 15.15[4] at 1041 (2d ed. 1974); *Simmons v. Fenton*, 480 F.2d 133 (7th Cir. 1973); *Aarhus Oliefabrik v. A. O. Smith Corp.*, 22 F.R.D. 33 (E.D.Wis.1958). Therefore, the question presented to the Court is whether or not on October 29, 1974, one year prior to the date on which the first amended complaint was filed, the plaintiff had or should have discovered the untrue statements or omissions about which she complains.[2] The Court finds, on the basis of the materials submitted by the parties, that the plaintiff in the exercise of reasonable diligence should have discovered said alleged untrue statements or omissions by that date, and that she was then, at a minimum, on notice of the possibility of fraud. See *Arneil v. Ramsey*, 550 F.2d 774 (2d Cir. 1977).

Plaintiff alleges that she first became aware of the facts which support her action at the December 20, 1974, annual meeting of shareholders when certain of the FWMT's shareholders accused the Trust of fraudulent practices and threatened to commence suit against it. Plaintiff also claims that while knowledge of mismanagement by the Trust and the other defendants might be imputed to her prior to December 1974, her cause of action is based on fraud, and awareness of possible mismanagement would not put her on notice of the possibility of fraud. The claim is without merit.

The history of the relevant public disclosures regarding the status of the FWMT is set forth in the memorandum of Robert W. Baird & Co., Inc., and Goldman, Sachs & Co.

("Underwriters' Memorandum") in opposition to plaintiff's motion to amend the complaint and to join them as additional parties defendant, which memorandum was filed on December 8, 1975, and in the exhibits attached thereto. Plaintiff in her briefs and at the oral argument held on April 21, 1978, has not contested the accuracy of the facts recited in the memorandum, although she does challenge the inference which defendants draw from those facts. The underwriters' memorandum recites the highly publicized decline in value of real estate investment trusts throughout 1973, culminating, in the case of the FWMT, in an announcement on January 17, 1974, that the FWMT was omitting its fourth quarter dividend and that there would be a delay in filing the final year-end report because the year-end audit was not completed. The announcement led to suspension of trading of FWMT shares by the New York Stock Exchange. At that time shares were trading for approximately $26 a share, down from a trading value of approximately $41 a share the year previous. The shareholders, including Turner, were notified of the suspension of trading in a letter from the FWMT dated February 1, 1974. Trading resumed on February 5, 1974, at approximately $12 a share. Thereafter the following events occurred and were publicly reported in newspaper articles and in mailings to shareholders: On April 17, 1974, the FWMT announced that on March 14, 1974, it had formed a special loan committee of incumbent trustees who were not affiliated with the FWC, which committee had hired independent counsel to oversee the FWMT's problem loans. On June 19, 1974, the SEC suspended trading in FWMT stock and announced that it was suing FWMT for failure to produce audited financial data for

---

**2.** Defendants argue that plaintiff's claim set forth in Count II of the amended complaint, which is based on the December 1971 prospectus, is in any case barred by the three-year limitation periods in 15 U.S.C. § 77m and § 551.59(5), Wis.Stats. Plaintiff argues that the three-year period does not begin to run until the defendants' fraud was or should have been discovered, i. e., that the period is tolled if the defendants actively conceal their fraudulent

course of conduct. Because the Court decides that plaintiff's claims are barred by the one-year period, it need not decide this issue for purposes of this motion. See, however, *Kramer v. Loewi & Co., Inc.*, 357 F.Supp. 83, n. 5 at 87–88 (E.D.Wis.1973). Cf. *Timmeck v. Minn.*, 413 F.Supp. 396 (N.D.Ill.1977); *Natural Resources Corporation v. Royal Resources Corporation*, 427 F.Supp. 880, 887 (S.D.N.Y.1977).

1973. The announcement prompted a statement by FWMT's president, Roger Fitzsimonds, reported in the Wall Street Journal on June 20, 1974, that:

" 'There has been no willful misconduct on the part of the trust or its officers and, hence, no basis for the entry of any decree containing a permanent injunction or requiring the trust to file a report which it can't at this time possibly file,' * * *." (Exhibit 6 to Underwriter's brief, filed Dec. 8, 1975.)

On June 28, 1974, an article appeared in the Wall Street Journal reporting that the FWC had agreed to purchase 15 million dollars in problem loans from the Trust in exchange for an agreement by the Trust not to sue the FWC for a three year period for any loans generated for the Trust by the FWC. A related article appeared in the Milwaukee Journal on August 14, 1974, reporting that the nonsuit agreement was arrived at after a group of "watchdog" trustees of the Trust had suggested that they might sue the FWC for bad advice given by the FWMC to the Trust with regard to loans. In a letter to shareholders dated August 3, 1974, the FWMT reported that legal counsel for the special loan committee—

" * * * is reviewing the Trust's investment portfolio to determine if possible claims exist against the Bank or the Adviser. To date, the Committee has informed the Adviser and the Bank of certain claims it believes could be asserted against them in the event the Trust experiences losses on its current investment portfolio. Claims could be based, in part, on allegations of mismanagement by the Adviser [FWMC] and the Bank of original loan-underwriting and subsequent administration and settlements." (Underwriters' Exhibit 10 at 4.)

The August 19, 1974, Form 10–K filed with the SEC, copies of which were also mailed to shareholders, further reported:

" * * * the Adviser [FWMC] is only liable to the Trust by reason of acts constituting bad faith, wilful malfeasance, gross negligence or reckless disregard of

its duties. A similar standard of performance is imposed upon the Bank * *. * * * [T]he SLC [special loan committee] has advised the Adviser [FWMC], the Bank and FWC of certain claims which it believes can be asserted against them in the event that the Trust experiences any losses in its current loan portfolio. These claims could in part be based upon the allegations that the Bank or the Adviser has failed to perform its duties in accordance with the standard of performance imposed upon them. Based upon the review of special counsel to date, the [special loan committee] believes that such claims may be valid with respect to substantial portions of the Trust's loan and investment portfolio * * *." (Underwriters' Exhibit 4 at 10.)

The commencement of a statutory period of limitation "[does] not await appellant's leisurely discovery of the full details of the alleged scheme." *Klein v. Bower,* 421 F.2d 338, 343 (2d Cir. 1970). In *Hupp v. Gray,* 500 F.2d 993 (7th Cir. 1974), the Court held that a sharp decline in the value of stock which plaintiff's broker had predicted would rise sharply in value was sufficient to put the plaintiff on notice of possible fraud by the broker, and thus to commence the running of the statutory period—

"Even a wholly unsophisticated investor should have realized in March 1967— when the market price had fallen to $17.50 rather than rising to $75—the existence of facts sufficient to precipitate into his consciousness a geographical paraphrase of the somewhat hackneyed remark of Marcellus to Horatio. The sharp fall in the market price was not a concealed fact but, rather, was clearly and painfully revealed to the plaintiff. 'At the very least, these circumstances should have aroused suspicion or curiosity on the part of plaintiff.' *Morgan v. Koch, supra* [419 F.2d 993, 998 (7th Cir. 1969)]. * *"
500 F.2d at 996–997.

While the plaintiffs in *Hupp* and in *Morgan* were no doubt better situated than Blanche Turner to uncover the full details of the defendants' conduct, Turner, and indeed all

shareholders of the FWMT, were in a position at least by the end of August 1974 to know that the FWMT was in serious financial difficulty, that the conflicts between the FWMT and its affiliated corporations were substantial in character, that such conflicts involved the independence of the FWMT from the other corporations, and that the SEC was investigating the FWMT for possible securities law violations. While officers of the FWMT denied during that period that any willful misconduct by the FWMT or its officers had occurred, the Court believes that the fact the officers were obliged to make such disclaimers, when coupled with the other public disclosures about the status of the Trust, was sufficient to put the plaintiff and others like her on notice of possible discrepancies between past statements of the FWMT and the actual state of affairs at the time such statements were made. See *Arneil v. Ramsey*, 550 F.2d 774, 781 (2d Cir. 1977). The difference between mismanagement and fraud of the type which plaintiff alleges is not so great that sufficient evidence of the former would not put a party on notice of the possibility of the latter.

For the foregoing reasons, the plaintiff's motion for leave to file her first amended complaint and to add additional parties defendant will be denied insofar as she seeks leave to add parties defendant.

2. *Plaintiff's Motion for Leave to Add the First Wisconsin National Bank of Milwaukee as an Additional Party Defendant, Filed March 23, 1976*

On March 23, 1976, the plaintiff filed a motion stating that she had inadvertently omitted to name the First Wisconsin National Bank of Milwaukee as an additional party defendant in her earlier motion filed on October 29, 1975, and seeking leave to add the Bank as a party defendant for the same reasons as set forth in her brief in support of the earlier motion. The motion

is formally unopposed; however, in view of the Court's finding above that by October 29, 1975, the statutes of limitations had run as to plaintiff's claims, this motion also must be denied.

3. *Plaintiff's Motion for Class Certification, Filed September 11, 1975*

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the plaintiff in her first amended complaint seeks leave to maintain her action as a class action.[3] The class which she seeks to represent is defined in paragraph 8 of the first amended complaint as follows:

"8. The class sought to be represented is comprised of plaintiff and all other persons and entities who purchased shares of beneficial interest ("shares") of defendant First Wisconsin Mortgage Trust from the date of the initial public offering of said shares through and until April, 1974; excluding such defendants and other persons and entities as ought not to participate in any recovery by the class by reason of having committed or participated in, or aided and abetted, any of the wrongful acts, transactions or course of conduct complained of herein."

Plaintiff herself purchased 100 share of FWMT on August 24, 1972, which the court record indicates she still owns.

The parties have not differentiated consistently between the different counts of the first amended complaint in their discussion of the class action motion for the apparent reason that the main thrust of plaintiff's first amended complaint is set forth in paragraphs 34–51, and embodied in Count I (paragraphs 52–54), which is predicated on § 10(b) liability. The Court interprets the plaintiff's argument to be that if class certification is proper with respect to Count I, then because of the common course of misconduct alleged, the plaintiff can also adequately represent the class on Counts II–

---

3. The plaintiff's motion for class certification was filed before she filed her motion for leave to file a first amended complaint and to add parties defendant. Since all parties to this action have in their briefs consistently treated the

motion for class certification as if it applied to the first amended complaint and not to the original complaint, the Court has done the same.

VII. In view of the Court's finding below that class certification is not appropriate for Count I, however, it must make the further determination of whether class certification is appropriate for any of the other counts independently. In so doing, it must be guided by the principle that in order to represent a class, the plaintiff must have a cause of action in her own right. *Bailey v. Patterson,* 369 U.S. 31, 32–33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); *Mintz v. Mathers Fund, Inc.,* 463 F.2d 495, 499 (7th Cir. 1972); *Robinson v. Penn Central Company,* 58 F.R.D. 436, 443 n. 10 (S.D.N.Y.1973). While a plaintiff may in her own right maintain an action which is not appropriate for class certification, in finding in this case that the plaintiff has no cause of action as to any of the counts of the first amended complaint, the Court is led to the further conclusion that the complaint, as amended, must be dismissed.

## COUNT I

■■ Before granting a motion for class certification, the Court must be satisfied that all of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) have been met. This determination must be made in light of two principles which are in practice somewhat difficult to reconcile. The first is that in doubtful cases, the doubts should be resolved in favor of certification, *Kahan v. Rosensteil,* 425 F.2d 161 (3d Cir. 1970), and the second is that the plaintiff has the burden of proof on the propriety of certification. *Rossin v. Southern Union Gas Company,* 472 F.2d 707 (10th Cir. 1973); *Demarco v. Edens,* 390 F.2d 836 (2d Cir. 1968).

The defendants in this action argue that the plaintiff has failed to sustain her burden with respect to every aspect of Rule 23 except the numerosity requirement in Rule 23(a)(1). The Court finds that the plaintiff has failed to show that "there are questions of law or fact common to the class." Rule 23(a)(2). In view of such failure it is impossible for the Court to determine if her claims are typical of those of the proposed class, Rule 23(a)(3), if she would be an adequate representative, Rule 23(a)(4), or if common questions of law or fact would predominate over individual questions, Rule 23(b)(3).

The plaintiff charges the defendants with having engaged in a common course of fraudulent misconduct from December 1971 through April 1974 to inflate the value of FWMT shares in order to induce members of plaintiff's class to purchase such shares. She charges them both with affirmatively misrepresenting material facts and with omitting to disclose material facts in connection with the prospectus which was issued in 1971 and "the prospectus of the Trust which was distributed publicly in or about February of 1973, Forms 10–K, annual reports to shareholders, annual and quarterly reports, registration statements, prospectuses, proxy statements and financial statements * * *." (Paragraph 43 of the first amended complaint.) In paragraph 44 of the first amended complaint plaintiff lists a series (a) through (q) of material facts which she claims were omitted from each of the documents identified in paragraph 43. She does not go into any detail in the first amended complaint with respect to each document individually.

The defendants argue that the plaintiff has failed to show that there exists a common nucleus of operative facts with respect to the claimed omissions and misrepresentations in all of the documents listed in paragraph 43 of the first amended complaint. Instead, they claim, she has made conclusory allegations of fraudulent misconduct unsupported by any factual showing, and, therefore, there exists no basis on which a court could find that the first amended complaint presents a common question of law or fact as to all proposed class members. Plaintiff responds with the argument that she is not required to prove her case on the merits in the complaint, and that she has more than complied with the pleading requirements established in various "fraud on the market" securities cases brought pursuant to § 10(b) of the Securities Exchange Act of 1934.

A plaintiff is not required to make an extensive evidentiary showing in support of a motion for class certification, and the district judge may not consider the merits of a complaint in ruling on a motion for class certification—

"* * * So long as he has sufficient material before him to determine the nature of the allegations, and rule on compliance with the Rule's requirements, and he bases his ruling on that material, his approach cannot be faulted because plaintiffs' proof may fail at trial. * * *"

*Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir. 1975).

See also *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). But cf. *Dolgow v. Anderson,* 43 F.R.D. 472 (E.D.N.Y.1968). On the other hand, neither may a judge conditionally certify an improper class on the basis of the speculative possibility that it may later meet the requirements of Rule 23. *Blackie* at 901.

In *Blackie,* the Court stated in footnote 19 at page 903 that even unrelated misrepresentations when alleged as part of a common scheme may satisfy the common question requirement of Rule 23(a)(2) in a § 10(b) action. The Court further stated at 903:

"While the nature of the interrelationship and the degree of similarity which must obtain between different representations in order to come within the outer boundaries of the 'common course of conduct' test is somewhat unclear, the test is more than satisfied when a series of financial reports uniformly misrepresent a particular item in the financial statement. * * *"

*Blackie* does not answer the question, however, of the degree of particularity required in a pleading in order to satisfy the "common course of conduct" test. (But see opinion at 904, wherein it appears at a minimum that the plaintiff traced three of the claimed misrepresentations through the documents issued by the defendant during the relevant period.) *Green v. Wolf Corporation,* 406 F.2d 291 (2d Cir. 1968), cert. denied 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969), is more to the point. Ruling in favor of class certification in a § 10(b) action based on an alleged course of conduct involving misrepresentations and omissions over a two and one-half year period, the Court stated at 299–300:

"Green argues that certain misrepresentations and omissions which caused the cash available for distribution to be overstated are common to all three prospectuses. Although it is not feasible to discuss each detail of these alleged misrepresentations without unduly protracting this opinion, it is sufficient for us to state that we agree with the assertion that the misstatements and omissions claimed with regard to the Tidelands Motor Inn account are common to all three prospectuses. * * * The Tidelands rental is a significant part of the total cash claimed by Wolf as available for distribution to shareholders; monetarily it is by far the most significant item in Green's list of misrepresentations. * * In sum, since there is a common question with regard to Tidelands, there is a common question with regard to the bulk of Green's allegations."

Both the plaintiff and the defendants herein refer to many "common course of conduct" securities fraud cases decided subsequent to *Green* in which *Green* is cited for the proposition that so long as the plaintiff shows a single "common strand" of misrepresentation running throughout the documents issued during the relevant class period, the action is suitable for class treatment. To discuss all of those cases in detail in this opinion would be futile. Suffice it to say that on review of those cases, the Court believes that in none of them has a mere allegation of a common course of misconduct, without reference in the complaint to the particularities of the misconduct, been held sufficient to satisfy the common question requirement of Rule 23(a)(2). For example, in *Herbst v. Able,* 47 F.R.D. 11 (S.D.N.Y.1969); *In re Memorex Security Cases,* 61 F.R.D. 88 (N.D.Cal.1973); *In re United States Financial Securities Litigation,* 64 F.R.D. 443 (S.D.N.Y.1974); and

*Byrnes v. IDS Realty Trust,* 70 F.R.D. 608 (D.Minn.1976), while the degree to which the plaintiffs had particularized the alleged misconduct of the defendants by reference in the complaints to particular sections of or statements in the documents relied upon is not precise, it appears that the documents or portions thereof were before the courts and were relied upon by the courts in arriving at their class action determinations. See *Herbst* at 16; *In re Memorex* at 95–97; *In re United States Financial Securities Litigation* at 448–449; *Byrnes* at 610. See also *Blackie v. Barrack, supra,* at 904; *Green v. Wolf Corporation, supra,* at 299–300; *Trattner v. American Fletcher Mortgage Investors,* 74 F.R.D. 352, 355 (S.D.Ind.1976).

The Court does not suggest that it must review the documents in question in order to make an initial determination on the merits of the plaintiff's case. Without reference to those documents in the complaint, however, in a more specific manner than has been done by the plaintiff in this case, the Court is unable to make a preliminary determination on whether or not a common question does in fact exist with regard to all of the proposed class members. Rule 9(b) of the Federal Rules of Civil Procedure requires that in pleading fraud, the circumstances constituting fraud shall be stated with particularity. The function of the rule is well illustrated in this case where the Court has the duty of making the threshold determination that the requirements of Rule 23 have been satisfied and is precluded from so doing because of the vague and conclusory allegations of the complaint. Were the Court to certify a class in this case, it would be doing so "on the basis of a speculative possibility that [the class] may later meet the requirements" of Rule 23. *Blackie, supra,* at 901. Certification on that basis is improper. As the Court found in *Feldman v. Lifton,* 64 F.R.D. 539, 544 (S.D. N.Y.1974):

" * * * The fundamental defect in plaintiffs' allegations is that they have not provided sufficient factual detail to establish that there are any questions of law or fact common to the class. * * *"

The Court further stated at 545–546:

"In determining whether plaintiffs have shown the existence of common questions, this court may not inquire into the substantive merits of plaintiffs' allegations. (Citations omitted.)

"However, in order for plaintiffs to sustain their burden of proof, *Green v. Wolf Corp.,* 406 F.2d 291, 298 (2d Cir. 1968); *Free World Foreign Cars, Inc. v. Alfa Romeo,* 55 F.R.D. 26, 29 (S.D.N.Y. 1972), that the common questions requirement is satisfied, they must provide detailed, particularized proof of specific fraudulent statements which constitute a common course of conduct. *Robinson v. Penn Central Co.,* 58 F.R.D. 436 at 444 (S.D.N.Y.1973)

"If plaintiffs fail to provide copies of the allegedly fraudulent documents or refer to particular statements in documents identified with some precision, it is impossible for the court to ascertain whether a consistent thread of misrepresentation runs through TIC's public statements for the period, 1962–1972, as is required. See cases cited, *supra.*"

This Court agrees with the reasoning of the *Feldman* Court, and for the reasons stated in that opinion and for the reasons stated above, the plaintiff Turner's motion for class certification will be denied as to Count I.

In addition, having found that the claim set forth in Count I is not pled with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure, Count I of the complaint, as amended, will also be dismissed.

### COUNT II

Count II sets out a claim under § 11 of the 1933 Act, 15 U.S.C. § 77k, based on the filing of an allegedly false registration statement with the Securities and Exchange Commission in connection with the public offering of shares of the Trust in December of 1971. This claim is barred by the statute of limitations.

Section 77m of Title 15 U.S.C. provides that no action shall be maintained to enforce a liability created under § 77k unless brought within one year after the discovery of the untrue statement or the omission on which the claim is based has or should have been made by the exercise of reasonable diligence, and "[i]n no event shall any such action be brought * * * more than three years after the security was bona fide offered to the public * *." The registration statement was filed at least by December of 1971, and the original complaint was filed in March of 1975, three years and three months later.

The plaintiff argues that the three-year period of limitation is tolled if the defendants took affirmative steps to conceal the omissions or misrepresentations. The Court does not agree and finds that the three-year period of limitation set out in 15 U.S.C. § 77m is absolute.[4] Otherwise 15 U.S.C. § 77m would create a limitation period for all suits of one year from the time discovery of the untrue statements or omissions should have been made, and the three-year provision would serve no purpose at all. See *Cowsar v. Regional Recreation, Inc.*, 65 F.R.D. 394, 397 (M.D.La.1974); *Burkardt v. Liberty*, 394 F.Supp. 1296, 1298–1299 (W.D. Pa.1975); *Fisher v. International Telephone & Telegraph Corporation*, 391 F.Supp. 744, 747–748 (E.D.N.Y.1975).

## COUNT III

Blanche Turner purchased her shares of the Trust in August of 1972. Count III sets out a claim under § 11 of the 1933 Act based on the filing of an allegedly false registration statement with the Securities and Exchange Commission in February 1973 in connection with the public offering of shares of the Trust on March 1, 1973. The basis for a claim under § 11 is that the registration statement contained an untrue statement of a material fact or an omission of a material fact. See *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96

S.Ct. 1375, 47 L.Ed.2d 668 (1976). In order to have a claim under that section, the plaintiff must prove that she purchased a security which was issued in connection with such registration statement, *Barnes v. Osofsky*, 373 F.2d 269, 273 (2d Cir. 1967), which Turner obviously cannot do, having purchased prior to 1973. (See Turner deposition at 13, 16, 21–22.) Thus she cannot represent a class on this count, nor can she maintain an independent action.

## COUNT IV

Count IV of the first amended complaint states in part:

"61. Plaintiff realleges and incorporates by reference paragraphs 1 through 51 hereof [which set forth the background to this action and, in paragraphs 34 through 51, set forth the alleged 'Deception and Fraud Practiced on the Plaintiff Class by Defendants in Connection with the Sale and Purchase of Shares of the Trust,' i. e., the alleged common course of misconduct].

"62. Defendants are subject to civil liabilities under Section 12(2) of the Securities Act by virtue of having offered and sold to members of the class shares of beneficial interest of the Trust, * * * by means of the above-described documents identified in paragraphs 42 and 43 hereof which included untrue statements of material fact and omissions to state material facts necessary to make the statements contained therein not misleading in the light of the circumstances under which they were made. * * *"

Section 12(2) of the Act, 15 U.S.C. § 77l, provides in part:

"Any person who—

* * * * * *

"(2) offers or sells a security * * by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact * * *,

---

4. *Kramer v. Loewi & Co., Inc.*, 357 F.Supp. 83, 87 (E.D.Wis.1973), is not strictly on point, because it involves the state statute of limitations applicable to a § 10(b) action. To the extent anything said therein is inconsistent with this decision, however, it is overruled.

"shall be liable to the person purchasing such security from him * * *."

Section 15 of the Act, 15 U.S.C. § 77*o*, provides:

"Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77*l* of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist."

All of the parties to this action have largely ignored Count IV. The plaintiff herself did not address it in any of her briefs on the class action motion, presumably on the theory that it is somehow ancillary to Count I and therefore certification of the class on Count I would suffice to sustain certification on this count also. Having decided that certification on Count I is not appropriate, the Court has been obliged to examine this count independently, and it finds, for the reasons hereinafter stated, that the count does not set forth a claim for relief.

Section 12(2) creates a cause of action only against a purchaser's immediate seller. *Cowsar v. Regional Recreation, Inc.*, 65 F.R.D. 394 (M.D.La.1974); *Dorfman v. First Boston Corporation*, 336 F.Supp. 1089, 1091–1093 (D.C.Pa.1972); *Jenkins v. Fidelity Bank*, 365 F.Supp. 1391 (D.C.Pa.1973). Furthermore, while § 15 provides for secondary liability on the part of persons in a control relationship to the seller, § 15 does not create a direct cause of action against such persons. *duPont v. Wyly*, 61 F.R.D. 615, 625–627 (D.C.Del.1973). In *duPont*, the Court held that a plaintiff who purchased on the open market did not state a cause of action under § 12(2) by alleging that the defendants conspired with each other to issue false statements about a security and that the defendants' scheme was designed to induce investors generally to purchase the security where the defendants were neither alleged to be plaintiff's direct sellers nor alleged to have aided and abetted plaintiff's direct seller to violate § 12(2):

"The language of Section 12(2) explicitly requires a buyer-seller relationship between plaintiff and defendant. Liability expressly resides in 'any person who offers or sells a security' and then operates only in favor of the 'person purchasing such security from him.' A number of cases and commentaries have espoused the position that Section 12(2) requires privity between the plaintiff and defendant and that Section 15 provides the exclusive basis for derivative liability. A few more recent cases however, favor a relaxation of the privity rule and an extension of liability beyond the plaintiff's immediate predecessor in title to individuals who have aided, abetted or conspired with a seller who has himself violated Section 12(2). * * *

"It is a far different matter to impose Section 12(2) liability on a defendant who is neither alleged to be a seller nor alleged to have aided and abetted a seller in a violation of that Section. This, in effect, is what the plaintiff urges, for he alleges only a conspiracy to issue materially misleading registration statements and not a conspiracy to aid and abet a violation of Section 12(2) by plaintiff's seller. Since the section clearly requires a violation by a seller as a pre-condition to any further, secondary liability, I conclude that plaintiff has failed to allege a violation of Section 12(2)." 61 F.R.D. at 626–627.

See also *Winter v. D. J. & M. Investment and Construction Corp.*, 185 F.Supp. 943 (S.D.Cal.1960), wherein the Court held that proof of the liability of the direct seller is a prerequisite to derivative recovery under § 15. While the "privity" required between seller and buyer under § 12(2) has undergone a gradual expansion, see *In re Caesars Palace Securities Litigation*, 360 F.Supp.

366, 379 (S.D.N.Y.1973), it has not expanded so far as to include the defendants named in the original complaint in this case. Turner did not purchase her shares of the Trust directly from any of those defendants (see Turner deposition at 20–22), nor has she claimed that they "controlled" her immediate seller as required under § 15, nor has she claimed that they "aided, abetted.or conspired with" her immediate seller to commit a violation of § 12(2). See *duPont v. Wyly, supra.*

### COUNTS V–VII

Counts V through VII of the first amended complaint are plaintiff's common law counts setting forth claims, respectively, based on fraud, negligence, and breach of fiduciary duty. In view of the finding above with respect to Count I that the description in paragraphs 34–51 of the first amended complaint of the defendants' alleged fraudulent course of conduct is insufficient to satisfy the pleading requirements for fraud set forth in Rule 9(b) of the Federal Rules of Civil Procedure, Count V must also be dismissed. In any event, as plaintiff has conceded, the common law counts are pendent to the federal statutory claims, and, therefore, since she has no cause of action on the federal claims, the common law claims must also be dismissed. *United Mine Workers v. Gibbs,* 353 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1965); *Hupp v. Gray,* 500 F.2d 993 (7th Cir. 1974).

4. *Plaintiff's Motion for Leave to Amend the Complaint and to Add Parties Plaintiff, i. e., Revised First Amended Complaint, Filed October 4, 1976*

In this motion the plaintiff has sought leave to add as parties plaintiff Marion V. Figen individually and Arthur A. Figen as Trustee for the Figen Family Trust in order "to end defendant's [sic] unusual concern with whether the plaintiff will adequately represent the plaintiff class" (paragraph 8 of plaintiff's motion), and to amend the complaint to reflect the addition of the Figens. Marion Figen is alleged to have purchased 200 shares of the Trust on May 9, 1973, which shares she transferred to Ar-

thur Figen as Trustee on August 8, 1974. The motion will be denied.

A plaintiff without a claim cannot be allowed to bring suit by making a class action allegation. *Mintz v. Mathers Fund,* 463 F.2d 495 (7th Cir. 1972). Similarly, a third party cannot intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure in a class action suit to save a claim as to which the original plaintiff never had a claim "for the intervenors cannot possibly have a claim or defense in common with a plaintiff who never had a claim." *Washington v. Wyman,* 54 F.R.D. 266, 272 (S.D.N.Y.1971). For the same reasons, the Court believes that a plaintiff who cannot maintain her own complaint has.no right to amend it pursuant to Rule 15 of the Federal Rules of Civil Procedure to bring in other parties who will thereafter remain as parties when the complaint is dismissed as to the original plaintiff. See *Schwartz v. The Olympic, Inc.,* 74 F.Supp. 800 (D.C.Del. 1947).

5. *Plaintiff's Motion for a Protective Order, Filed March 22, 1976*

In view of the disposition of the other pending motions, the motion for a protective order is moot and will be dismissed.

### ORDER

For the foregoing reasons,

IT IS ORDERED that the plaintiff's motion for leave to file a first amended complaint and to add parties defendant is denied insofar as it seeks leave to add defendants, and is granted with respect to the defendants named in the original complaint.

IT IS FURTHER ORDERED that the plaintiff's motion to add the First Wisconsin National Bank of Milwaukee as an additional party defendant is denied.

IT IS FURTHER ORDERED that the plaintiff's motion to add as parties plaintiff Marion V. Figen individually and Arthur A. Figen as Trustee for the Figen Family Trust, and to file a revised first amended complaint to reflect the addition of the Figens as parties plaintiff is denied.

IT IS FURTHER ORDERED that the plaintiff's motion for class certification is denied.

IT IS FURTHER ORDERED that the plaintiff's motion for a protective order is dismissed as moot.

IT IS FURTHER ORDERED that the first amended complaint is dismissed with prejudice.

IT IS FURTHER ORDERED that since the First Wisconsin Corporation is incorrectly designated in the title of this action as First Wisconsin National Bank Holding Company and James E. Liek is improperly named as James E. Lieck, the title of this action is hereby amended to correctly designate these parties as set forth in this paragraph.