Thomas M. TRECKER, Plaintiff,

v.

Dane T. SCAG, Wisconsin Marine, Inc., and Ransomes, Sims and Jefferies, Ltd., Defendants.

No. 79–C–694.

United States District Court, E. D. Wisconsin.

Nov. 4, 1980.

Hugh R. Braun, Godfrey & Trump, Milwáukee, Wis., for plaintiff.

Richard S. Gibbs, Joseph A. Ranney, Gibbs, Roper, Loots & Williams, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

In this action for damages, the plaintiff alleges that he was defrauded in connection with the sale of securities in violation of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5. The matter is before me on the defendants' motion for summary judgment and on two discovery motions. The motion for summary judgment will be granted, the discovery motions will be dismissed as moot, and this action will be dismissed.

The factual background to this action was set out in my previous order denying the defendants' motions to dismiss. *Trecker v. Scag*, 481 F.Supp. 861 (E.D.Wis.1979). Additional factual matters will be developed below in connection with my discussion of the defendants' motion for summary judgment.

The grounds for the summary judgment motion are that the plaintiff's action is barred by the applicable statute of limitations and that the information which the defendants failed to disclose to the plaintiff was immaterial to the plaintiff's decision to compel the defendant Wisconsin Marine, Inc. (WMI) to redeem his stock. With respect to the latter ground, I held in my previous decision that the complaint properly asserted materiality:

"The plaintiff has alleged that the negotiations between WMI and Ransomes commenced before the state court held that the redemption agreement was enforceable, and that had the plaintiff known of these allegations, he would have dropped his redemption demand. These are sufficient allegations of materiality as to the failure to disclose." 481 F.Supp. at 865.

The defendants vigorously contend that the undisputed facts conclusively rebut the plaintiff's above allegation. Specifically, the defendants rely on the state court's finding that Mr. Trecker ceased to be a stockholder in WMI and instead became a creditor in December 1976 when the corporation rejected his demand to redeem his shares pursuant to the stock repurchase agreement. The defendants also argue that the actual cause of any damages sustained by the plaintiff in this case was his own decision to compel redemption of his WMI stock.

These contentions on the part of the defendants are unpersuasive. Collateral estoppel applies only when the identical issue sought to be foreclosed from dispute in the action at bar was fully and fairly litigated in a prior proceeding. The issue in the prior state court proceeding was the selection of an appropriate date on which WMI became bound to redeem Mr. Trecker's stock. The issue presented by the defendants' instant motion is whether the negotiations with Ransomes were material to the plaintiff's continued demand that WMI redeem his shares. In my opinion, these issues are not sufficiently congruent to permit application of the doctrine of collateral estoppel. Therefore, the state court's finding that the plaintiff became a creditor of WMI in 1976 does not preclude Mr. Trecker

from asserting here that he would have withdrawn his redemption demand before the state court enforced the stock repurchase agreement had he known of the terms of the impending deal with Ransomes.

The main deficiency in the defendants' causation argument is that it overlooks Mr. Trecker's premise that he was free to withdraw his redemption demand prior to February 21, 1978, when the state court granted specific performance of the stock repurchase agreement. As the plaintiff has cogently demonstrated, this element of choice is what distinguishes this case from *Toledo Trust Co. v. Nye*, 588 F.2d 202 (5th Cir. 1978), and *St. Louis U. Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 562 F.2d 1040 (6th Cir. 1977), and brings the case closer to *Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 538 F.2d 532 (3rd Cir. 1976). Moreover, the defendants have not cited any authority contradicting the plaintiff's contention that he could have dropped his redemption demand, and my own research has not produced any such authority.

■ I am satisfied that the question whether the negotiations with Ransomes "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available" is essentially a question of fact not susceptible to resolution on summary judgment. *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). Accordingly, I reject the defendants' contention that the Ransomes negotiations were immaterial.

■ However, I believe summary judgment must be entered against the plaintiff because the complaint in this action was not timely filed. The statute of limitations applicable to the plaintiff's federal securities fraud claims is to be derived from the state's security statute. *La Rosa Building Corp. v. Equitable Life Assurance Society of the United States*, 542 F.2d 990 (7th Cir. 1976). Chapter 551 of the Wisconsin Statutes contains the Wisconsin Uniform Securities Law. Section 551.59(5) of that chapter provides:

"No action shall be maintained under this section unless commenced before the expiration of 3 years after the act or transaction constituting the violation or the expiration of one year after the discovery of the facts constituting the violation, whichever first expires, . . . ."

The complaint in this case was filed on August 30, 1979. The issues to be decided are: What act or transaction constituted the violation, and when did the plaintiff discover such act or transaction?

The plaintiff concedes that the "failure to disclose negotiations with Ransomes . . . constitutes the basis of the Trecker claim . . . ." Plaintiff's brief at p. 15. However, the plaintiff then argues that it was the sale of stock to Ransomes that constituted the violation and that the sale was not finally consummated until September 7, 1979; Mr. Trecker hopes to avoid any statute of limitations problem by establishing the latter date as the date of violation.

■ This contention by the plaintiff must be rejected. In my view, the violation, if one there was, occurred during the period that the negotiations with Ransomes were underway, up to May 17, 1978, when the state court held that Mr. Trecker became a creditor of WMI in December 1976. The plaintiff's theory in this case is that it was the failure to disclose these negotiations that constituted a fraud under the federal securities laws; when the stock sale to Ransomes was concluded is therefore irrelevant.

■ The next question is when did the plaintiff discover the negotiations between Ransomes and WMI. It is clear that the plaintiff's attorney, and probably Mr. Trecker as well, knew about the negotiations with Ransomes at least by late June 1978. On June 22, 1978, the defendants offered to disclose the terms of the agreement to the plaintiff and his counsel on condition that they not reveal the terms of the sale to anyone; however, because Mr. Trecker's attorney found the condition objectionable, the defendants' offer was declined.

Moreover, at a hearing held in state court on June 26, 1978, statements made by the plaintiff's counsel, Mr. Braun, and Mr. Scag's attorney, Mr. Koch, forcefully demonstrate that the former was aware of the deal with Ransomes:

"Mr. Braun: ...Here we find out that these people are going to take that stock tomorrow when it's released by your clerk and they are going to sell it to an English company.... I don't know what this agreement provides but I suspect that it provides that that stock or the equivalent of that stock is going to be sold to Ransomes...for in round numbers, $800 a share. Now isn't that remarkable that on the day that Trecker surrenders it, Scag sells it to a British company for twice its value or twice what he paid Trecker for it.....[T]hey are replacing Trecker's capital with the capital of a British firm but they are making that British firm in effect pay Scag $800 a share for Trecker's stock. It seems to me to be run away injustice....

"Mr. Koch: ...I've got this contract that I'm going to have $625,000 poured into the company." Tr. at 392, 402, 406, 420.

The above information which was possessed by the plaintiff's attorney is imputed to Mr. Trecker by operation of law. *See Wauwatosa Realty Co. v. Bishop*, 6 Wis.2d 230, 94 N.W.2d 562 (1959). Also, the plaintiff admitted in his deposition that he had discussed matters which were raised at the June 22nd hearing with his attorney shortly thereafter:

"Q [Mr. Gibbs]: When did you first learn that there was in negotiation any kind of arrangement with Ransomes Sims relative to its potential acquisition of a share interest in Wisconsin Marine?

"A [Mr. Trecker]: Well, the name Ransomes Sims came up following that hearing that Hugh [Braun] attended. You know, he discussed it with me." Tr. at 31.

For these reasons, I find that the plaintiff discovered the facts which are now belatedly claimed to be the basis of a federal securities violation at least by June 26, 1978. Under the applicable statute of limitations, he then had one year to file this action. Since the complaint was not filed until August 30, 1979, the action is barred by the statute of limitations and must be dismissed. *See Colonial Bank & Trust Co. v. American Bankshares Corp.*, 478 F.Supp. 1186 (E.D.Wis.1979); *Turner v. First Wisconsin Mortgage Trust*, 454 F.Supp. 899, 905–07 (E.D.Wis.1978).

Therefore, IT IS ORDERED that the defendants' motion for summary judgment be and hereby is granted.

IT IS ALSO ORDERED that the pending motions relative to discovery be and hereby are dismissed as moot.

IT IS FURTHER ORDERED that this action be and hereby is dismissed.