**Thomas M. TRECKER, Plaintiff,**

v.

**Dan T. SCAG, Wisconsin Marine, Inc. and Ransomes, Sims and Jefferies, Ltd., Defendants.**

**No. 79–C–694.**

United States District Court, E. D. Wisconsin.

Dec. 18, 1979.

---

Godfrey & Trump by Hugh R. Braun, Milwaukee, Wis., for plaintiff.

Gibbs, Roper, Loots & Williams by Joseph A. Ranney, Milwaukee, Wis., for defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The complaint in this action seeks damages for alleged violations of § 10(b) of the Securities and Exchange Act of 1934, 15

U.S.C. § 78j(b), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5. The matter is before me on motions of all three defendants to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim, and on the motion of the defendant Ransomes, Sims and Jefferies, Ltd. (Ransomes) to dismiss for lack of jurisdiction over the person.

The complaint alleges that in December 1971, the plaintiff and the defendant Scag purchased a corporation, with the plaintiff contributing $100,000 in capital and receiving 400 shares of stock, and Scag contributing $150,000 in capital and receiving 600 shares of stock. In January 1972, Messrs. Trecker and Scag executed an agreement with the corporation, Wisconsin Marine, Inc., (WMI) pursuant to which the latter corporation became bound to purchase Trecker's and Scag's stock in the event of their death or separation from the company.

Through 1972 and 1973, WMI's financial situation did not permit the company to employ the plaintiff; accordingly, on December 23, 1973, the complaint alleges that Trecker notified the board of directors that he wished to exercise his right to demand redemption of his stock. Since neither the corporation nor Scag were financially able to purchase the stock at that time, Trecker did not press his demand. His involvement as an officer and director of the company continued, however, and on July 2, 1975, he personally guaranteed a $500,000 loan to WMI. This infusion of capital evidently caused the company to prosper; the book value of WMI's stock grew from $313.00 per share at the end of 1975 to $715.00 per share at the end of March 1978.

On December 10, 1976, Trecker renewed his redemption demand, but WMI's board refused to acquire the stock. On December 16, 1976, Trecker sued in state court for specific performance of the redemption agreement. After a two day trial in December, 1977, the court held on February 21, 1978, that the redemption agreement was enforceable. The court subsequently ruled that Trecker's stock should be valued at $402.00 per share, book value on December 31, 1976, the valuation date closest to Trecker's December 10th demand. The judgment called for the payment of this sum over an eighteen month period. The stock was tendered to the court on May 23, 1978.

The complaint alleges that on June 28, 1978, WMI advised the court that it had negotiated a sale of the plaintiff's interest to Ransomes for the sum of $124,176.00. The state court then granted WMI's motion to prepay its obligation to the plaintiff and have the stock released to it immediately. The state court refused to place a copy of the WMI-Ransomes agreement in the record.

In connection with WMI's sale to Ransomes of Trecker's 34% interest in the corporation, the plaintiff charges two violations of the securities laws; the first merits quotation in full:

"1. *Failure to Disclose.* That the negotiations with Ransomes, Sims and Jefferies, Ltd., commenced before the trial of the action to enforce the Stock Purchase Agreement held in December, 1977; that Dane T. Scag, as principal executive officer of Wisconsin Marine, Inc. did not disclose to Thomas M. Trecker as a stockholder and a member of the Board of Directors of the existence of such negotiations; that Dane T. Scag and Wisconsin Marine, Inc. had an affirmative obligation to disclose the existence and nature of the negotiations with Ransomes, Sims and Jefferies, Ltd. as soon as they commenced. That had such negotiations been disclosed, Trecker would have deferred his demand for redemption of his stock under the Stock Purchase Agreement, a fact known and fully understood by the defendants; that the failure to disclose these negotiations was done with intent to defraud Trecker of the reasonable value of his stock; that the defendant, Ransomes, Sims and Jefferies, Ltd. knew or should have know that the 34.2% interest of Trecker in Wisconsin Marine, Inc. it was acquiring was being sold in violation of law."

The second charge is that WMI made a knowing misrepresentation of material fact in advising the court that Trecker's interest had been sold for $124,176; the complaint alleges that, according to Ransomes' annual report, Ransomes paid $646,697 for Trecker's 34% interest. For these alleged violations, the complaint seeks the difference between the amount the plaintiff received when the corporation redeemed his shares and his pro rata share of the proceeds of the sale to Ransomes.

## I. JURISDICTIONAL MOTIONS

The subject matter jurisdiction of a district court over an action arising under 15 U.S.C. § 78j(b) and Rule 10b–5 is predicated on the use by the defendants of the mails or other instrumentalities of interstate commerce in connection with the purchase or sale of securities. *See, e. g., Kerbs v. Fall River Industries, Inc.,* 502 F.2d 731, 737 (10th Cir. 1974); *Boone v. Baugh,* 308 F.2d 711, 713 (8th Cir. 1962). Since the defendants have controverted the complaint's formal allegation regarding use of these jurisdictional means, the court must determine from the affidavits and other evidentiary materials submitted by the parties whether the plaintiff has met his burden of establishing the existence of subject matter jurisdiction. *See* 5 Wright & Miller, Federal Practice and Procedure § 1350, at 549–50, 555.

The present record clearly indicates that the jurisdictional requirement has been satisfied. Between December 20, 1977, and June 12, 1978, the defendant Scag and officials at Ransomes exchanged no less than eight letters covering matters pertinent to the acquisition by Ransomes of WMI stock. It is not required that the manipulative or deceptive device be communicated in the mailed materials, as long as such a device is employed in connection with the use of the mails or of the instruments of interstate commerce. *Kerbs, supra,* 502 F.2d at 737. In these circumstances, I find that the plaintiff has met his burden and that the court therefore has subject matter jurisdiction over this action.

The plaintiff has also satisfied his burden of showing the existence of jurisdiction over the person of Ransomes, a British corporation. The test established by the Supreme Court for determining whether a court may, consistent with due process, require a nonresident corporation to submit to the court's jurisdiction is whether the corporation has had certain "minimum contacts" with the forum. The contacts which Ransomes has had with the forum, all of which are related to the plaintiff's claim in this case, include the mail negotiations for the purchase of an interest in WMI, the visit by Ransomes' officials in February 1978 to inspect WMI's facilities, and the agreement Ransomes and WMI reached for the purchase of a one third interest in a forum corporation. These contacts demonstrate that Ransomes "purposely avail[ed] itself of the privilege of conducting activities within [Wisconsin], thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). For these reasons, I believe Ransomes has had sufficient contacts with the forum to make it consistent with "traditional conception[s] of fair play and substantial justice" to require Ransomes to submit to this court's jurisdiction. *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945).

## II. FAILURE TO STATE A CLAIM

The parties have agreed by stipulation that the defendants' motions to dismiss for failure to state a claim under Rule 12(b)(6), Federal Rules of Civil Procedure, should be decided solely on the basis of the pleadings, without consideration given to the evidentiary materials submitted on the jurisdictional issues. Accordingly, for the purpose of resolving these motions, I will assume the factual allegations of the complaint are true and limit my inquiry to the question whether a cause of action has been stated against the defendants under the statute and the rule.

■ Construing the complaint in the light most favorable to the plaintiff, I believe a claim for relief has been stated. By exercising his right to have WMI redeem his stock, the plaintiff has satisfied the requirement that he be a purchaser or seller of securities. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Moreover, the complaint sufficiently alleges that each of the defendants engaged in intentional wrongdoing, satisfying the scienter requirement of Rule 10b–5. *See Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 558 F.2d 831, 833 (7th Cir. 1977). The allegation that Ransomes knew or should have known that it was assisting in a violation of the securities laws states a claim based on liability as an aider and abettor. *See Hochfelder v. Midwest Stock Exchange,* 503 F.2d 364, 374 (7th Cir. 1974).

■ Finally, before the plaintiff may recover, he must prove "that the defendant[s] caused the alleged harm by inducing him to rely on material misstatements or misrepresentations . . .." *Wright v. Heizer Corp.,* 560 F.2d 236, 249 (7th Cir. 1977), *cert. denied,* 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978). As to the plaintiff's first charge of illegality, quoted above, "involving a failure to disclose, proof of materiality is sufficient to establish reliance." *Id.* The plaintiff has alleged that the negotiations between WMI and Ransomes commenced before the state court held that the redemption agreement was enforceable, and that had the plaintiff known of these negotiations, he would have dropped his redemption demand. These are sufficient allegations of materiality as to the failure to disclose.

■ However, I do not believe the plaintiff can prove the necessary reliance with respect to his second charge of illegality, i. e., the alleged misrepresentation to the court at the hearing on June 28, 1978. At that point, the plaintiff had surrendered the stock, and the purchase price had been established. Even if the defendants were guilty of an intentional misrepresentation as to the price Ransomes had agreed to pay for the WMI stock, the misrepresentation could not have caused the plaintiff's alleged damages; therefore, this allegation cannot be the basis of liability under the statute or the rule. *See, e. g., Wright v. Heizer Corp., supra.* Of course, by granting the defendants' motion to dismiss on this issue, I do not preclude the plaintiff from introducing evidence regarding the alleged misrepresentation; such evidence may be relevant to prove an intent on the defendants' part to conceal material information from the plaintiff.

I have considered the defendants' remaining arguments in support of their motions to dismiss and find them unpersuasive.

## CONCLUSION

Therefore, IT IS ORDERED that the motions of all three defendants to dismiss the complaint for lack of subject matter jurisdiction be and hereby are denied.

IT IS ALSO ORDERED that the motion of Ransomes, Sims and Jefferies, Ltd., to dismiss the complaint for lack of jurisdiction over the person be and hereby is denied.

IT IS FURTHER ORDERED that the motions of all three defendants to dismiss the complaint for failure to state a claim be and hereby are denied insofar as the complaint seeks to impose liability on the basis of the defendants' failure to disclose material information, but that such motions be and hereby are granted insofar as the complaint seeks to impose liability on the basis of the defendants' alleged misrepresentations at the hearing on June 28, 1978.