Thomas M. TRECKER, Plaintiff,

v.

Dane T. SCAG, Wisconsin Marine, Inc., and Ransomes, Sims and Jefferies, Ltd., Defendants.

No. 79–C–694.

United States District Court, E. D. Wisconsin.

May 8, 1981.

Hugh R. Braun, Godfrey & Trump, Milwaukee, Wis., for plaintiff.

Richard S. Gibbs, Joseph A. Ranney, Gibbs, Roper, Loots & Williams, Milwaukee, Wis., for defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

On November 4, 1980, I granted the defendants' motion for summary judgment and dismissed the complaint because of the plaintiff's failure to file within the period of the applicable statute of limitations. *Trecker v. Scag*, 500 F.Supp. 752 (E.D.Wis. 1980). The plaintiff has moved for reconsideration of that decision. The parties have briefed the motion, and an oral hearing was conducted on March 19, 1981.

This is a federal securities action under SEC rule 10b–5 involving an alleged failure by the defendants Dane Scag and Wisconsin Marine, Inc. (WMI) to disclose to the plaintiff the existence of negotiations between WMI and the defendant Ransomes, Sims and Jefferies, Ltd. (Ransomes) which led to Ransomes' purchasing 34.1% of the outstanding stock in WMI for $624,176.00. At the time the negotiations began, the plaintiff was a shareholder in WMI. Although the complaint alleges otherwise, it is clear that the negotiations commenced after the trial in state court of Mr. Trecker's action to compel specific performance of a stock purchase agreement. The agreement bound WMI to redeem the plaintiff's stock upon his voluntary separation from the corporation at the higher of book value or the original issuance price. The reason Mr. Scag opened negotiations with Ransomes was to obtain sufficient capital to permit WMI to redeem Mr. Trecker's shares.

In an earlier decision in this case, which preceded the ruling now in question, I denied the defendants' jurisdictional motions and granted in part and denied in part motions to dismiss for failure to state a claim. *Trecker v. Scag*, 481 F.Supp. 861 (E.D.Wis.1979). The complaint was dismissed insofar as it attempted to impose liability on the basis of the defendants' alleged misrepresentation at a state court hearing held on June 26, 1978, regarding the price Ransomes had agreed to pay for newly-issued WMI stock because the hearing occurred after "the plaintiff had surrendered [his] stock ... and the [redemption] price had been established." *Id.* at 865. I therefore concluded that the alleged misrepresentation could not have been a cause of the plaintiff's alleged damages. However, I held that the defendants' failure to disclose to the plaintiff the existence of their negotiations *before* the state court ruled that WMI had violated the stock purchase agreement stated a claim under rule 10b–5. *Id.*

In the challenged decision of November 4, 1980, I held that a triable issue of fact was presented by the plaintiff's contention that the defendants' non-disclosure was material to his continued demand for redemption. However, I found on the basis of the undisputed facts before me that the plaintiff had discovered the facts constituting the alleged violation more than one year before the instant action was filed. Applying the relevant statute of limitations, I held that the complaint was not timely and dismissed the action.

In support of the instant motion for reconsideration, Mr. Trecker argues that he did not discover the facts constituting the alleged violation within the meaning of the applicable statute of limitations until he learned that WMI had sold the newly-issued stock to Ransomes for $624,176.00, an amount well in excess of the $165,000.00 WMI paid to the plaintiff to redeem his

shares. The plaintiff alleges that he did not learn of the actual price paid by Ransomes until July 1979, when he received a copy of Ransomes' 1978 annual report. Mr. Trecker also contends that the defendants fraudulently concealed the actual purchase price paid by Ransomes by misrepresenting both at the June 26th hearing and in a brief filed with the state court of appeals that Ransomes had paid only $124,176.00 for the WMI shares.

These contentions must be rejected. I have examined the transcript of the June 26th hearing, upon which I relied in my November 4th decision, but I have not found any assertion by WMI's counsel that Ransomes had agreed to pay only $124,-176.00 for the WMI shares. Rather, in addition to the comment quoted in my previous decision, where WMI's counsel stated that he had a "contract . . . to have $625,-000 poured into the company," counsel made the following statement:

"Now, I'd like to point out several important facts. Number one is that Scag has to come up with additional 40,000 some dollars to this deal for which he'll never recoup a penny of it. As a result of this this company is going to pay the additional $124,000 and an additional $500,000 worth of working capital." Tr. at 388.

The letter of intent signed by WMI and Ransomes on February 24, 1978, and the agreement signed by the same parties in June 1978, make it clear that what counsel meant by "the additional $124,000" is the difference between the $40,000 Mr. Scag had to pay into the corporation and the $165,000 WMI was required to pay to redeem Mr. Trecker's shares. The above documents demonstrate that the deal with Ransomes was structured in terms of replacing the capital paid to Mr. Trecker to redeem his shares ($165,000.00) and advancing an additional $500,000 in working capital. Clearly, counsel's statement at the hearing cannot reasonably be construed as a representation that Ransomes had agreed to pay only $124,176 for the newly-issued WMI stock.

Moreover, I believe the following statement, made by the plaintiff's counsel at the June 26th hearing, totally contradicts the plaintiff's present assertion that he did not know after the state court hearing that Ransomes had agreed to pay a substantially higher price for WMI stock than WMI paid to redeem Mr. Trecker's shares:

"Your Honor, I'd like to make an offer of proof with reference to this matter. . . . I believe that if this agreement were received in evidence it would show essentially that Dane Scag is selling Wisconsin Marine, Inc. to its British affiliate, Ransoms, Simms, and Jeffreys [sic], Limited, and that this sale is not at book value at all but that it is at fair market value." Tr. at 424.

As the plaintiff's attorney pointed out earlier in the proceeding, the fair market value of WMI stock in June 1978 was at least eight hundred dollars a share, well over the four hundred dollars per share WMI paid to redeem Mr. Trecker's stock. Tr. at 402, *quoted in* 500 F.Supp. at 755.

■ It is thus apparent that after the June 26th hearing, Mr. Trecker knew that Ransomes was paying more for WMI stock than WMI had paid to redeem Mr. Trecker's shares. The plaintiff contends, however, that this information was insufficient to commence the running of the statute of limitations because he did not then know the exact price Ransomes had agreed to pay. This contention is meritless. It is not required that a party have knowledge of all the facts constituting the alleged violation before the statute begins to run; rather, the one year limitations period will begin running "when the plaintiff discovers the violation or when he becomes aware of essential facts which will, if diligently investigated, disclose the fraud." *Cahill v. Ernst & Ernst*, 448 F.Supp. 84, 88 (E.D.Wis.), *vacated and remanded*, 588 F.2d 835 (7th Cir. 1978), *reaff'd on remand sub nom, Colonial Bank & Trust Co. v. American Bankshares Corp.*, 478 F.Supp. 1186 (E.D.Wis.1979), *aff'd*, 625 F.2d 151 (7th Cir. 1980). *Accord, Koehler v. Haechler*, 27 Wis.2d 275, 278, 133 N.W.2d 730 (1965); *Milwaukee Western Bank v. Lienemann*, 15 Wis.2d 61, 63–64, 112 N.W.2d 190 (1961).

■ After the June 26th hearing, the plaintiff knew at least two essential facts which, in my opinion, triggered the running of the statute of limitations and should have prompted further investigation into matters which Mr. Trecker now claims were not known to him. First, he knew that during the winter of 1978 Dane Scag had arranged the sale of a substantial interest in WMI to Ransomes. Second, the plaintiff knew that Ransomes had agreed to pay substantially more per share for WMI stock than WMI had paid Mr. Trecker for his securities. Indeed, the basis of the plaintiff's action is that the defendants' failure to disclose these facts prior to the state court's ruling on the enforceability of the stock purchase agreement violated rule 10b–5. For these reasons, I reaffirm my prior ruling that the one year statute of limitations began running on Mr. Trecker's federal securities claim on June 26, 1978.

In a brief filed with the state court of appeals on May 11, 1979, WMI's state court counsel made the following statement:

> "The fact is that Trecker's stock amounting to 34% of the corporation was redeemed by the corporation for the amount of the judgment. The new investor acquired stock from the corporation so as to give them 34% of the stock of Wisconsin Marine Inc. The amount paid by the investor for said stock was $124,-176."

The plaintiff argues that the above misrepresentation of the amount paid by Ransomes for the newly-issued WMI securities constitutes fraudulent concealment which tolled the running of the statute of limitations.

■ This contention is unpersuasive because the doctrine upon which the plaintiff relies is inapposite. In *Cahill v. Ernst & Ernst, supra*, 448 F.Supp. at 87, Judge Robert W. Warren of this district cogently stated the reasons why the doctrine of fraudulent concealment does not toll the running of the statute of limitations once the plaintiff knows or should know the facts constituting the alleged violation:

> "The equitable doctrine of fraudulent concealment is applicable only in those cases where the application of the state statute would otherwise bar the action. Its use operates to extend the point at which the limitation period begins from that as set out in the state statute to a point where the plaintiff learned of the fraud or should have learned of it. The federal doctrine has been utilized in those cases where the state statute starts the running of the limitation period at the point of the violation, regardless of the plaintiff's knowledge. If the state statute provides that the limitation period begins to run when the plaintiff has knowledge of the fraud or should have had knowledge of it, the federal doctrine simply has no applicability. . . .

> "If this action is barred, it is barred by operation of the Wisconsin statute that provides that the action must be brought within one year of the discovery of the facts constituting the violation. Since the federal doctrine of fraudulent concealment cannot act to toll the statute after discovery of the fraud nor commence its running prior thereto, it has no applicability."

Based on the foregoing, I reaffirm my prior ruling that the complaint in this action, which was filed on August 30, 1979, was untimely. The defendants are therefore entitled to summary judgment dismissing the complaint.

Moreover, after further consideration of the defendants' arguments as to the materiality of the undisclosed information in this case, I am now persuaded that the defendants' failure to disclose the existence of their negotiations did not violate rule 10b–5. I base this conclusion on several undisputed facts. The plaintiff first demanded that WMI redeem his shares in December 1973, and he renewed this demand in December 1976. After the WMI board of directors rejected this demand, Mr. Trecker commenced an action in state court to compel specific performance of the stock purchase agreement, which the state court tried on December 6 and 7, 1977.

Not until December 20, 1977, after the trial in state court, did Mr. Scag open negotiations with Ransomes and only for the purpose of raising the capital to redeem the plaintiff's stock. WMI and Ransomes signed a letter of intent on February 24, 1978. However, three days before that date the state court ruled that WMI had violated the stock purchase agreement and that Mr. Trecker was entitled to specific performance of that agreement. Under the circumstances, I do not believe that a reasonable trier of fact could find either that the defendants intentionally defrauded the plaintiff, as required by *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), or that the non-disclosure was material to the plaintiff's investment decision—a decision which Mr. Trecker first made four years before the negotiations began, which he reaffirmed one year before Dane Scag contacted Ransomes, and which was controlled by a contract enforceable only in state court. *See Santa Fe Industries v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977).

Therefore, IT IS ORDERED that the plaintiff's motion for reconsideration of the order entered in this case on November 4, 1980, be and hereby is denied.