Valorie OLSEN, individually and as Personal Representative of the Estate of J. Perry Olsen; Janis O. Sterrett; and James P. Olsen, Jr., Petitioners,

v.

VAIL ASSOCIATES REAL ESTATE, INC.; Vail Associates Farm And Ranch Company; Daniel J. Leary; and Richard A. Kesler, Respondents.

No. 96SC28.

Supreme Court of Colorado,
En Banc.

April 7, 1997.

Dufford, Waldeck, Milburn & Krohn, Linda E. White, Flint B. Ogle, Laird T. Milburn, Grand Junction, for Petitioners.

Holme Roberts & Owen LLC, Nancy J. Gegenheimer, Boyd N. Boland, Denver, Wal-ter H. Sargent, P.C., Colorado Springs, for Respondents.

Justice SCOTT delivered the Opinion of the Court.

In *Olsen v. Vail Associates Real Estate, Inc.*, No. 94CA0710 (Colo.App. Nov. 9, 1995) (not selected for publication), the court of appeals held that respondents, real estate brokers and defendants before the trial court, did not fail to disclose material information to petitioners, the sellers and plaintiffs before the trial court, and therefore did not breach a fiduciary duty of loyalty. The court based its conclusion in large part on the trial court's finding that, prior to the contract for sale being entered into between the buyer and petitioners, respondents were not aware of the specific terms of a simultaneous land sale contract between the buyer and a third party. The court also held that because respondents did not represent both parties in any one transaction, no dual agency existed and respondents breached no fiduciary duty by failing to disclose such a relationship. We granted petitioners' request for certiorari review [1] and now affirm the judgment of the court of appeals.

## I.

Following the death of J. Perry Olsen in February 1988, his ranch (the estate property) was put on the market through an open listing. [2] Initially, the listing included an ad-

1. Our order granting certiorari listed the following issues for review:

    1. Did the court of appeals improperly apply precedent by not requiring full and complete disclosure of all facts relative to the subject matter of an agency relationship which might have reasonably affected the decision of the principal concerning that subject? In particular, did the court of appeals err in affirming the trial court's determination that the information learned by the defendant agents at various times, both before and after execution of the Olsen Estate–Lindholm sale contract, concerning the Lindholm–Rickstrew negotiations and sale contract, and not disclosed by the agents to their principal, The Olsen Estate, was not a material fact?

    2. Did the court of appeals improperly apply precedent by not requiring written disclosure of a dual agency and consent of both principals by failing to find a breach of fiduciary duties where no such disclosure of and consent to a dual agency were obtained?

    3. Did the court of appeals improperly create a new standard which does not require an agent to disclose to his principal acts contrary to his fiduciary duties by characterizing such acts as "ministerial"?

    4. Did the court of appeals improperly interpret precedent requiring an agent to disclose to his principal material facts regarding the subject of the agency, by only requiring disclosure of those facts which might be used to alter the legal position of the principal at the time disclosure is made?

2. An open listing solicits from any real estate agent the names of potential purchasers. The real estate agent is not the exclusive agent for the sale of the property and is only entitled to compensation upon the sale of property to a buyer that the agent has introduced to his selling principal.

jacent parcel of land (the children's property) owned by Janis O. Sterrett, James P. Olsen, Jr. and Valorie Olsen, the children of J. Perry Olsen. Valorie Olsen, individually and as personal representative of the estate of J. Perry Olsen, and James P. Olsen, Jr. (collectively the Olsens), are the petitioners before us. In March 1989, respondents, Vail Associates Real Estate, Inc., Daniel J. Leary, and Richard A. Kesler (collectively Vail Associates), introduced petitioners to a third party, Magnus Lindholm, who was interested in buying both properties.

The Olsens' attorney drafted a proposed land sale agreement that included both the estate property and the children's property. Lindholm counter-offered, after which the Olsens decided not to include the children's property in the sale and withdrew that parcel from the negotiations. Lindholm, however, felt that ownership of the estate property alone was not sufficient to ensure control over the development of the Lower Piney Valley, in which both properties were located. Lindholm's attorney therefore suggested that he explore the purchase of the only other parcel of land in the area, a ranch owned by Del Rickstrew (the Rickstrew property),[3] because that property had the primary access roads to both the estate property and the children's property and thus controlled any future development in the area.[4]

In December 1989, Lindholm requested that Vail Associates inquire whether the Rickstrew property was available for purchase. However, Rickstrew refused to negotiate the sale of his property through Vail Associates or any other real estate agent and demanded to negotiate personally with Lindholm. On January 5, 1990, Lindholm and Rickstrew commenced preliminary negotiations. During this time, Vail Associates performed certain tasks to facilitate the arrangement, such as introducing the parties, providing a model contract, and delivering a sealed package of unknown content to Rickstrew. However, Vail Associates did not directly participate in the discussions or negotiations between Rickstrew and Lindholm.

On January 13, 1990, Lindholm agreed to purchase the Rickstrew property, contingent upon a closing on the sale of the estate property. Although aware that negotiations were generally taking place, Vail Associates did not inform the Olsens that Lindholm was attempting to purchase the Rickstrew property. On January 18, 1990, Lindholm signed contracts to purchase both the estate property and the Rickstrew property. On March 20, 1990, the parties closed on the estate property, at which time the Olsens received $8,175,000, their asking price, and Vail Associates received their commission. The closing on the Rickstrew property occurred in June 1990, for a purchase price of $2,000,000, and Vail Associates did not receive a commission for that sale.

Upon learning of the sale of the Rickstrew property and the price Lindholm had paid for that property,[5] the Olsens sued Vail Associates, alleging a breach of fiduciary duty, fraudulent concealment, and negligence. After a bench trial, the trial court entered judgment for Vail Associates and against the Olsens.[6] The court of appeals affirmed the trial court's judgment, concluding that: (1) although Vail Associates owed a duty of disclosure to the Olsens, no breach occurred because any undisclosed information was not material; and (2) Vail Associates did not engage in a dual agency or fail to disclose any agency relationship with Lindholm, and therefore it did not breach its fiduciary duty

3. The only private parcels of land in the Lower Piney Valley were the Olsen estate property, the children's property, and the Rickstrew property.

4. The easement through the Rickstrew property was limited at that time to agricultural purposes and the access road therefore could not be used for any other business purpose. Thus, by owning the Rickstrew property, Lindholm could maintain the limitations on the easement and be as-

sured that the children's property would not be overly developed.

5. The record reveals that Lindholm paid $6,000 per-acre for the Rickstrew property and $400 per-acre for the estate property.

6. The trial court dismissed on summary judgment the Olsens' individual actions relating to the children's property and that order of the trial court is not before us on appeal.

to the Olsens. We granted certiorari review and now affirm the judgment of the court of appeals.

## II.

A real estate broker, as any other agent, owes a fiduciary duty of good faith and loyalty to its principal, the seller. *See Moore & Co. v. T–A–L–L, Inc.*, 792 P.2d 794, 798 (Colo.1990). To discharge its fiduciary duty of good faith and loyalty, a real estate broker or agent must disclose all facts relative to the subject matter of the agency relationship that may be material to the decision the principal is about to make. *See id.* at 799; *see also Wheeler v. Carl Rabe, Inc.*, 198 Colo. 311, 314, 599 P.2d 902, 904 (1979). Indeed, the law of agency imposes a strict duty of disclosure on a fiduciary. *See generally* Restatement (Second) of Agency § 381 (1958).

### A.

In the instant case, the Olsens contend that Vail Associates breached the fiduciary duty it owed to them by not revealing that Lindholm was negotiating to purchase the Rickstrew property and the ultimate sale price of that property.[7] However, the trial court found, and the record supports, that Vail Associates was not aware of the price to be paid by Lindholm for the Rickstrew property, or that a contract had been entered into for the sale of that property, until *after* the Olsens had entered into the sale contract for the estate property. Therefore, and important here, the trial court found that Vail Associates did not withhold any information that was material.

A breach of fiduciary duty occurs if the broker, as agent, conceals from the seller, as principal, "material" information, i.e., "information that bears upon the transaction in question." *Moore & Co.*, 792 P.2d at 799. An agent is thus required to disclose to the principal any facts "which might reasonably affect the principal's decision." *Wheeler*, 198

Colo. at 314, 599 P.2d at 904. However, the burden is on the principal to demonstrate that the agent was aware of the nondisclosed fact, that the nondisclosed fact is material, and that the agent breached his or her fiduciary duty.

In terms of what constitutes "material" information in the present case, we find instructive the United States Supreme Court's decision in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). In *Northway*, Justice Marshall, writing for a unanimous Court, explained that, in a securities law context involving solicitation of shareholder proxies, materiality is gauged by "whether the omitted information would have assumed actual significance in the deliberations of the reasonable shareholder" or whether there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." 426 U.S. at 449, 96 S.Ct. at 2132. This materiality standard was also adopted and applied in transactions for the purchase and sale of shares of stock. *See, e.g., Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *Svalberg v. SEC*, 876 F.2d 181, 183 (D.C.Cir.1989).

In addition, this standard to determine materiality has recently been employed in other contexts. *See, e.g., United States v. Nelson*, 54 F.3d 1540, 1544 (10th Cir.1995) (holding that under federal criminal sentencing guidelines, omitted information is deemed material if it could influence or affect the sentencing court's decision); *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1428 n. 9 (3d Cir.1994) (noting that a plaintiff alleging false advertising must prove, *inter alia*, that the deception is material in that it is likely to influence purchasing decisions); *Robinson v. Maruffi*, 895 F.2d 649, 655 (10th Cir.1990) (concluding that facts concealed by the defendant were material because they may have influenced the district attorney's decision to prosecute);

---

**7.** We treat the Olsens' argument as centered upon the nondisclosure of three particular facts: (1) that Lindholm was negotiating to purchase the Rickstrew property; (2) the purchase price to

be paid by Lindholm for the Rickstrew property; and (3) the dual agency, if any, entered into by Vail Associates.

*People v. Vance*, 933 P.2d 576, 577 n. 1 (Colo.1997) (noting that under perjury statute, section 18–8–501(1), 8B C.R.S. (1996 Supp.), a "materially false statement" is defined as "any false statement ... which could have affected the course or outcome of an official proceeding, or the action or decision of a public servant, or the performance of a governmental function"); *see also* Restatement (Second) of Torts § 538(2)(a) (1977) ("The matter is material if a reasonable [person] would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question."). Thus, the question presented here is whether the information known to and withheld by Vail Associates would, if disclosed, have assumed actual significance in the deliberations of the Olsens in regard to the sale of the estate property or significantly altered the total mix of information available to them.

The trial court concluded that the information omitted by Vail Associates was not material. The trial court found that, although Vail Associates knew that Lindholm was negotiating to purchase the Rickstrew property, it was not aware of any specific facts— e.g., that a contract had actually been entered into, its details, or the sale price—until *after* Lindholm and the Olsens had entered into a contract for the sale of the estate property.

Moreover, testimony in the record reveals that it was not knowledge of Lindholm's negotiations for the Rickstrew property that would have been valuable to the Olsens, but rather the actual price offered or paid for that property.[8] The Olsens' attorney testi-fied that, in the past, other potential buyers' negotiations with Rickstrew had not caused the Olsens to alter their position in regard to the estate property and that only the fact of a contract for the sale of the Rickstrew property and the price to be paid under such contract would have been material to the deliberations of the Olsens in their dealings with Lindholm. The Olsens' attorney further testified that it was widely assumed that, for purposes of access, any potential purchaser of the estate property, including Lindholm, would also attempt to purchase the Rickstrew property. On this record, therefore, we do not consider failure to disclose the fact of preliminary negotiations between Lindholm and Rickstrew to be material to the Olsens.

The trial court further found that Vail Associates did eventually learn the price paid by Lindholm for the Rickstrew property, but only after the contract had been entered into for the sale of the estate property. The Olsens testified and the trial court recognized that the per-acre price of the Rickstrew property would have been valuable information to the Olsens in their dealings with Lindholm.[9] Importantly, however, the trial court determined that Vail Associates did not have this information prior to the signing of the sale contract for the estate property and therefore could not have disclosed it to the Olsens.

Although it is undisputed that Vail Associates did not disclose this information regarding the sale price even after they learned of it,[10] the trial court noted that the Olsens

8. Indeed, in a securities law context, courts have held that information regarding mere negotiations for a deal are immaterial until the companies have agreed upon the actual price and structure of the deal. *See, e.g., Reiss v. Pan American World Airways, Inc.*, 711 F.2d 11, 14 (2d Cir. 1983); *Staffin v. Greenberg*, 672 F.2d 1196, 1204–07 (3d Cir.1982); *Trecker v. Scag*, 514 F.Supp. 364, 366 (E.D.Wis.1981). Similarly, courts have consistently held that information regarding preliminary negotiations between the parties is not material and therefore need not be disclosed. In *Basic v. Levinson*, 485 U.S. 224, 233, 108 S.Ct. 978, 984, 99 L.Ed.2d 194 (1988), the Supreme Court established a "bright-line" rule that information concerning any negotiations not yet at the "agreement in principle" stage could be withheld without violating the securities laws. However, recognizing that materiality is a question of fact, *see id.*, we do not determine by our holding today that in every instance negotiations are immaterial.

9. Counsel for Vail Associates conceded at oral argument before this court that if Vail Associates had known of the sale price of the Rickstrew property *prior* to the signing of the contract for the sale of the estate property, it would have had a *duty to disclose such information.*

10. By failing to disclose this information, Vail Associates may have violated the rules and standards promulgated by the Colorado Real Estate Commission. Indeed, the Chairman of the Commission testified that the actions of Vail Associ-

failed to demonstrate how knowledge of the sale price *after* the contract for the estate property was signed would have in any way affected their decision-making as it related to the transaction. The trial court stated:

> Plaintiffs thus have demonstrated no way in which this information would be of material use to the Estate in this transaction if disclosed subsequent to the execution of the contract. No stratagem has been presented, even from an *ex post facto* analysis as to how the Estate would use this information.

That conclusion is supported by the testimony of the Olsens' attorney who admitted at trial that the usefulness of the information vanished after the estate had signed the purchase and sale agreement with Lindholm.

We therefore conclude that the trial court's determination that any omission by Vail Associates was not material is amply supported in the record and should not be disturbed on review. *See M.D.C./Wood, Inc. v. Mortimer,* 866 P.2d 1380, 1384 (Colo.1994). Accordingly, because petitioners have not identified any material information withheld before the contract for the sale of the estate property was entered into and have not established that information withheld after the contract was executed would have proven useful to the Olsens, the trial court and the court of appeals were correct in concluding that no breach of fiduciary duty occurred.

### B.

The Olsens also assert that Vail Associates breached its fiduciary duty by engaging in a dual agency. Because it is clear based on our review of the record that no agency relationship existed between Vail Associates and Lindholm in relation to the sale of the estate property, we agree with the court of appeals and reject the Olsens' contention.

In the context of residential real estate transactions, it is a widely accepted rule of agency law that a real estate broker stands in an agency relationship with the seller. *See Stortroen v. Beneficial Fin. Co.,* 736 P.2d 391, 396 (Colo.1987). The selling broker's role is to use expertise and judgment in promoting the interests of the seller by finding a buyer for the property. *See id.* at 397. However, no such agency relationship generally exists between the selling broker and the buyer in a residential real estate transaction, nor is any such agency created solely on the basis of the selling broker's "contacts with the purchaser and efforts expended to find the purchaser a home." *Id.* at 398.

Under Colorado law, a real estate broker or salesperson is expressly prohibited from engaging in a dual agency—i.e., representing both the seller and the buyer in the same real estate transaction—unless the parties know of and consent to the arrangement. *See id.; Finnerty v. Fritz,* 5 Colo. 174, 175–76 (1879).[11] Nothing, however, precludes a real estate broker from representing different principals in different transactions. *See Stortroen,* 736 P.2d at 402. Where there is no conflict in the facts which are alleged to have created the agency, the question of the existence of an agency relationship is a question of law. *See Smith v. Davis,* 67 Colo. 128, 130, 186 P. 519, 520 (1920).

Here, the trial court determined as a matter of law that Vail Associates was not engaged in a dual agency relationship. The trial court based its conclusion in large part on the limited nature of the tasks performed by Vail Associates to facilitate the sale of the Rickstrew property. We agree that Vail Associates did not engage in a dual agency relationship as to the sale of the estate property. Moreover, although not directly pertinent to the question of a dual agency, we agree that Vail Associates did not act as agents for Lindholm in the sale of the Rickstrew property.

---

ates did not conform to its rules. However, the trial court did not specifically determine whether the Real Estate Commission rules were violated and, if so, which rules. We therefore need not, and do not, address that issue here.

**11.** This same principle is codified in section 12–61–113(1)(d), 5B C.R.S. (1991), which proscribes a broker from "[a]cting for more than one party in a transaction without the knowledge of all parties thereto."

First, the record reveals that, in connection with the sale of the estate property, Vail Associates only had contact with Lindholm which was necessary to facilitate the sale. Indeed, even Vail Associates' contact with Lindholm regarding the Rickstrew property was made in an effort to sell the estate property. Second, Vail Associates was not involved directly with Lindholm's attempt to purchase the Rickstrew property because Mr. Rickstrew had specifically refused to deal with real estate brokers. Vail Associates performed only certain ministerial tasks, such as contacting Rickstrew, introducing him to Lindholm, and assembling a "discussion draft contract," and had done so only because it knew that Lindholm would not purchase the estate property without simultaneously purchasing the Rickstrew property.

Moreover, Lindholm's attorney testified that he treated Vail Associates "as agents of the Estate and avoided revealing Lindholm's confidences to them" and that "Lindholm, an attorney himself, stated the same attitude." Finally, while Vail Associates received a substantial commission for the sale of the estate property, it received no commission for the sale of the Rickstrew property.

Therefore, although Vail Associates had contact with Lindholm throughout the course of negotiations for the sale of the estate property, the record does not support a conclusion that it attempted to represent both the Olsens, as sellers, and Lindholm, as buyer, in the sale of the estate property. *See Stortroen*, 736 P.2d at 398. Also, the activities engaged in by Vail Associates for Lindholm in connection with his purchase of the Rickstrew property amounted to no more than auxiliary or ministerial tasks, for which the agents received no commission. Thus, the trial court was correct in concluding, as a matter of law, that Vail Associates did not engage in a dual agency and did not breach its fiduciary duty of good faith and fair dealing by acting in such a capacity.

### III.

In sum, we agree with the court of appeals that Vail Associates did not breach its fiduciary duty to the Olsens. First, Vail Associ-

ates cannot be held accountable for failing to disclose information regarding the sale price that, according to the trial court, was not in its possession prior to the sale of the estate property. Furthermore, the Olsens have failed to demonstrate that the preliminary negotiations between Lindholm and Rickstrew, or the sale price of the Rickstrew property known after the contract for the estate property had been entered into, constituted material information that would have significantly altered the total mix of information available to them. Finally, we conclude that the trial court was correct as a matter of law in determining that Vail Associates did not engage in a dual agency. We therefore agree that no breach of fiduciary duty occurred and affirm the judgment of the court of appeals.