COMMAND COMMUNICATIONS, INC., Plaintiff–Appellee and Cross–Appellant,

v.

FRITZ COMPANIES, INC., Defendant–Appellant and Cross–Appellee.

No. 00CA1209.

Colorado Court of Appeals, Div. II.

Sept. 27, 2001.

James A. Reed, P.C., James A. Reed, Colorado Springs, CO; Simons & Wiskin, Jerry P. Wiskin, New York, NY, for Plaintiff–Appellee and Cross–Appellant.

Daniel Stageman, P.C., Daniel B. Stageman; Law Offices of Randy Allen, Randy G. Allen, Colorado Springs, CO, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge CASEBOLT.

In this action concerning the duties customs brokers owe to importers of foreign goods, defendant, Fritz Companies, Inc., appeals the judgment in favor of plaintiff, Command Communications, Inc., on plaintiff's claim for breach of fiduciary duty. Plaintiff cross-appeals the damage award and the judgment in favor of defendant on plaintiff's claims for negligence and breach of contract. We affirm in part, reverse in part, and remand.

Plaintiff imports a product known as a "fax switch" from Asia into the United States at the port of Denver. The switch allows the receipt of both voice and facsimile transmissions on the same telephone line and thus avoids the necessity of employing separate dedicated lines for each.

The United States Customs Service promulgates a harmonized tariff schedule that contains classification listings for over fifty thousand imported goods, including goods such as those that plaintiff imports. Although the Customs Service strives for uniformity in the application of the schedule, the directors of different ports of entry may classify similar goods differently. In part because of the complexity of this scheme, importers typically hire customs brokers to prepare documents for importation of the

product, to assist in coordinating with various regulatory agencies and in classifying goods, and to collect and remit tariffs to the Customs Service.

An importer must use the classification dictated by the receiving port's Customs director, unless the importer protests the director's decision or requests a "binding ruling" from Customs headquarters. When the Customs Service issues such a binding ruling, the Customs Service is bound by that decision on that specific product at all ports, but the ruling does not control the classification of other, similar products. Nevertheless, importers and brokers may use binding rulings as persuasive authority in protests and requests for rulings filed with respect to similar products.

In a given year, there may be thousands of binding rulings. The Customs Service publishes a selected portion of the binding rulings in its weekly Customs Bulletin and allows other rulings to be published in the form of books and computer disks. None of these sources publishes all of the rulings every year, and before 1996 when the Customs Service established its official web site on the internet, there was no central database or compendium of such rulings.

If an importer or broker does not request a binding ruling, the broker typically interviews the importer and reviews the tariff schedule to see whether the product fits unambiguously into one of its classifications. A broker may research the classification given to similar products and then recommend a classification for a product. The Customs Service makes the final classification at the port of entry for the product.

The Customs Service occasionally changes its position about the classification of a particular product or type of product. Accordingly, even when the classification of a particular product has been ruled upon by the Customs Service in a protest, periodic review of binding rulings that are issued for similar products may yield a decision that is helpful to an importer wishing again to challenge the classification of its product.

In 1989, plaintiff hired defendant as its customs broker. Subsequently, plaintiff began importing its fax switch into the port of Denver. The Customs Service approved a classification of plaintiff's product as "other telephonic switching apparatus," for which a tariff rate of 8.5% was imposed.

In 1991, plaintiff protested this classification with some assistance from counsel, arguing that its fax switch was more appropriately classified under a "telegraphic" designation, which was subject to a lower tariff. The Customs Service denied plaintiff's protest.

Plaintiff did not appeal the denial or seek a binding ruling. Plaintiff also told defendant it would not require its assistance to pursue the protest and did not ask defendant to take any action on its behalf. Subsequently, however, in 1993 and 1994, other competitors obtained binding rulings classifying similar devices as "other telegraphic switching apparatus" with a tariff of 4.7%. These binding rulings were published in Customs Rulings Packets, but not in the Customs Bulletin, the official weekly publication of the Customs Service.

Defendant did not research the body of binding rulings and thus did not learn of these classifications. It continued to classify plaintiff's product at the higher rate and collected and remitted tariffs based on the telephonic classification.

After plaintiff learned that similar goods had been classified as "telegraphic," it initiated a protest through counsel, obtained a reclassification for its own switches, and then brought this action against defendant. Alleging that defendant had a duty to research and be aware of analogous rulings on similar products that might be used to persuade the Customs Service to change its fax switch classification, plaintiff sought to recover the difference in tariffs between the higher rate and the lower rate from the time the "telegraphic" rulings were published until the classification for its own product was changed.

After a bench trial, the court found in favor of plaintiff on its claim for breach of fiduciary duty, but did not impose the duty plaintiff asserted. Instead, it concluded that defendant should have advised plaintiff to

seek a binding Customs ruling or should have done so itself, and it awarded damages of $88,608. However, concluding that there was insufficient evidence to support the existence of a specific contractual promise or warranty, the court found for defendant on the claims for breach of contract and breach of warranty. Determining that defendant owed no duty to plaintiff gratuitously to research and find the rulings reclassifying similar goods, it also found for defendant on plaintiff's negligence claim. This appeal and cross-appeal followed.

## I.

Defendant contends the trial court erroneously concluded that it had a fiduciary duty to advise plaintiff to seek a binding ruling from the Customs Service concerning its fax switches. We agree.

■ Before there can be a breach of a fiduciary duty, a fiduciary relationship or a confidential relationship must exist. A fiduciary duty arises between parties through a relationship of trust, confidence, and reliance. *Turkey Creek, LLC v. Rosania,* 953 P.2d 1306 (Colo.App.1998).

■ An agency relationship creates a fiduciary relationship. *City & County of Denver v. Fey Concert Co.,* 960 P.2d 657 (Colo.1998); *Stortroen v. Beneficial Finance Co.,* 736 P.2d 391 (Colo.1987); *Cole v. Jennings,* 847 P.2d 200 (Colo.App.1992). Customs brokers act as agents for importers and therefore act in a fiduciary capacity. *See United States v. Yip,* 930 F.2d 142 (2d Cir. 1991); *American Customs Brokers Co. v. United States Customs Service,* 10 C.I.T. 385, 637 F.Supp. 218 (1986) (customs broker enters goods into the United States as importer's agent).

■ The court determines as a matter of law the nature and scope of the duty owed by a fiduciary. *Turkey Creek, LLC v. Rosania, supra; DeBose v. Bear Valley Church of Christ,* 890 P.2d 214 (Colo.App.1994), *rev'd on other grounds,* 928 P.2d 1315 (Colo.1996); *see also, e.g., Van Schaack Holdings, Ltd. v. Van Schaack,* 867 P.2d 892 (Colo.1994)(court defines fiduciary duty of officer of close corporation selling stock to minority shareholder); *Lacy v. Rotating Productions Systems, Inc.,* 961 P.2d 1144 (Colo.App.1998)(fiduciary duty of officer to corporation can include duty to assign patent rights). The fact finder decides whether there has been a breach of any fiduciary duty defined by the court. *DeBose v. Bear Valley Church of Christ, supra.*

■ In determining the scope of a fiduciary duty, a court may consider statutes, regulations, or customs that have been adopted for the protection of customers. *See Rupert v. Clayton Brokerage Co.,* 737 P.2d 1106 (Colo.1987); *see also United Blood Services v. Quintana,* 827 P.2d 509 (Colo.1992)(source of legal duty may be a legislative enactment).

Here, the trial court concluded that defendant was on notice that plaintiff was dissatisfied with the classification of its fax switch and that defendant had promised to handle plaintiff's importing business properly. It concluded that defendant should have advised plaintiff to seek a binding ruling or should have done so itself, in an effort to obtain a lower tariff for the fax switches, noting that a similar product had been classified as "telegraphic." Although not explicitly stated, it appears that the trial court found the duty to arise as of July 1991.

■ It is undisputed that defendant owed plaintiff a fiduciary duty as plaintiff's agent. To that extent, we agree with the trial court. However, we disagree that the scope of such duty included advising plaintiff to seek a binding ruling or doing so itself. We so conclude for a number of reasons.

First, the court presumed that plaintiff would have obtained a binding ruling had it been advised to do so. However, the undisputed evidence established that plaintiff declined to appeal the denial of its 1991 protest, after being informed of such an available avenue by counsel, apparently because of cost factors and because of its belief that it would not prevail. Indeed, we note that another binding ruling issued in the summer of 1991 stated that similar products should be classified as "telephonic." Moreover, plaintiff specifically told defendant that it would not require its assistance in filing its protest.

Second, the court imposed a duty that had not been pleaded or proved by plaintiff. Colorado has a liberal notice-pleading requirement. Nevertheless, an adversary must receive notice of the claims that will be raised at trial. *Lyons v. Hoffman*, 31 Colo.App. 306, 502 P.2d 980 (1972). The trial court may not enter judgment based on a theory that was neither presented in pleadings nor pursued at trial. *Clemann v. Bandimere*, 128 Colo. 24, 259 P.2d 614 (1953)(trial court erred in granting judgment on agency theory when plaintiff had at all times proceeded on theory of breach of express promise to pay).

Here, plaintiff's theory at trial was that defendant had a continuous duty to look for analogous rulings that might be used to persuade the director of the port of Denver to change the classification for the fax switch. Plaintiff did not assert the theory that defendant should have advised it to obtain a binding ruling. Moreover, the court declined to impose any duty of care in the context of plaintiff's negligence claim, and it would appear illogical to impose a duty to advise plaintiff to seek a binding ruling if there was no duty to research rulings subsequent to the unsuccessful protest.

Third, given the evidence in the record and our review of applicable law, regulations, and standards, the scope of the duty the trial court imposed was too broad.

In a section entitled "Due diligence by broker," the federal regulation governing customs brokers states, in relevant part: "Each broker must exercise due diligence in making financial settlements, in answering correspondence, and in preparing or assisting in the preparation and filing of records relating to any customs business matter handled by him as a broker." 19 C.F.R. § 111.29(a) (2000); *see also Black & White Vegetable Co. v. United States*, 125 F.Supp.2d 531 (Ct. Int'l Trade 2000).

In *dicta* in a binding ruling, the Customs Service elaborated on a broker's legal requirement of due diligence: "At the heart of informed compliance is a strategy called reasonable care, in which the trade community demonstrates its exercise of due diligence by following the suggestions and protocols promulgated by the Customs Service in its publications, which include ... [binding] rulings." Headquarters Ruling HQ 961505 (U.S.Cust.Serv.1998).

In our view, these pronouncements simply evidence a duty to use reasonable care without delineating any specific scope of such a duty. We do not question a requirement of due care; however, we will not derive from this broad requirement a specific duty to advise importer-customers to seek binding rulings. Moreover, to the extent plaintiff contends that its expert witness provided sufficient testimony to prove the existence of a duty to advise plaintiff to seek a binding ruling, and therefore sufficient evidence to prove the fiduciary duty, we disagree. As we discuss in a later section of this opinion, we agree with the trial court that, based on defendant's expert testimony, no duty giving rise to a claim of negligence should exist under these circumstances.

A proposed amendment to the federal regulations promulgated by the Customs Service under the title "Reasonable Care Guidelines" states, "Importers and their agents are responsible for familiarizing themselves with ... [binding] rulings ... which govern their import transactions." However, the applicable federal regulations make clear that binding rulings are "binding" only with respect to the particular product that is the subject of the ruling and may not be relied upon as controlling the classification of other, similar products. 19 C.F.R. § 177.9 (1989). Therefore, binding rulings "govern" only those specific products noted in each particular ruling.

■ Furthermore, the proposed amendment indicated on its face that it was merely a proposal and should not be relied upon even as a current Customs Service position. In addition, we note that Customs *regulations* are entitled to judicial deference, but binding rulings are not entitled to judicial deference, though they may be relied upon to the extent of their persuasive authority. *United States v. Mead Corp.*, 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001).

We find additional support for our determination in *Pistorino & Co. v. Style Leather Co.*, 361 Mass. 464, 280 N.E.2d 676 (1972). There, an importer contended that its cus-

toms broker had a fiduciary duty to seek or to advise the importer to seek a binding ruling concerning the tariff to be imposed on certain goods. After considering the federal regulations governing customs brokers, the court concluded that no regulation specifically imposed such a duty, and that it could not be inferred from the general obligation to exercise due diligence and operate in good faith. The court held that, absent special circumstances giving rise to the necessity to seek a binding ruling, brokers have no general fiduciary obligation to advise their importer-customers to seek binding rulings.

Based on our own review of the federal regulations noted above, we reach a conclusion that accords with the *Pistorino* decision. Under the facts of this case, the only "special circumstances" that could possibly have given rise to an obligation to advise plaintiff to seek a binding ruling would be defendant's actual knowledge of the "telegraphic" rulings before plaintiff discovered them. Because it did not have such knowledge, and because we do not conclude that defendant had an independent obligation to locate the rulings through periodic research, we likewise conclude that it had no duty to advise plaintiff to seek a binding ruling or to do so itself.

We therefore conclude that defendant had no duty, as of July 1991, to advise plaintiff to seek a binding ruling or to do so itself. General obligations of "due diligence" and "reasonable care," absent further definition, are insufficiently specific to bind defendant to such a duty.

■ Relying upon *Rupert v. Clayton Brokerage Co., supra,* and *Paine, Webber, Jackson & Curtis, Inc. v. Adams,* 718 P.2d 508 (Colo.1986), plaintiff nevertheless asserts that defendant had a continuing duty to stay informed concerning product classifications by researching the field of binding rulings concerning similar products and to relay any new developments in the field to it. We reject this contention.

Both the cited cases involved securities accounts wherein the customer relinquished practical control of the account. In such a situation, the broker acts as a fiduciary of the customer. In managing a "discretionary" account, a securities broker's fiduciary duties

include the duty to keep informed regarding changes in the securities market that affect the customer's interests, the duty to keep the customer informed regarding those changes, and the duty to explain the risks involved.

However, the analogy that plaintiff attempts to draw between securities brokers and customs brokers is inapt. A public securities market is subject to constant fluctuation. Consequently, it is reasonable to expect that a securities broker who has discretionary trading authority will monitor the market, and the changes affecting his or her customers' discretionary accounts, on a near constant basis. In addition, the changes in the market are constantly and readily available through numerous published and other sources. The law therefore imposes a continuing fiduciary duty on securities brokers to monitor and report.

Here, however, changes in Customs Service classifications are relatively few and far between and are not contained in searchable databases. Further, customs brokers are not given discretionary authority to change, or attempt to change, product classifications. In addition, the Customs Service port director makes the determination as to which classification is "correct" (absent a protest or binding ruling), whereas there is no check or balance upon a securities broker's trading decisions.

■ A more appropriate, though not completely comparable analogy lies in the duties of real estate agents. Like customs brokers, who make an initial classification determination at the time a product is first imported, real estate agents owe a fiduciary duty at the time of sale of real property to exercise reasonable care on behalf of their customers. *Olsen v. Vail Associates Real Estate, Inc.,* 935 P.2d 975 (Colo.1997)(agency relationship between real estate agent and seller gives rise to fiduciary duty).

■ A fiduciary's obligations include the duty to exercise reasonable care and skill. *Destefano v. Grabrian,* 763 P.2d 275 (Colo.1988). Viewed within the analogous context of negligence, a real estate agent's common law duty of reasonable care does not

obligate the agent to perform a title search for his or her customer's property gratuitously, absent a request from the customer. *Mayflower Mortgage Co. v. Brown,* 530 P.2d 1298 (Colo.App.1975)(not selected for official publication). Likewise, a real estate agent does not have an obligation to discover that a city in which property is located intends to condemn a portion of the property. To impose such a duty, a division of this court has held, would unreasonably expand the duties of loyalty, good faith, and reasonable care. *Schenck v. Van Ningen,* 719 P.2d 1100 (Colo. App.1986).

Similarly, to impose a continuing fiduciary duty to conduct research on binding rulings subsequent to a broker's initial classification determination would unreasonably expand the fiduciary duty of reasonable care and skill owed by customs brokers.

Accordingly, the judgment against defendant on the breach of fiduciary duty claim cannot stand.

## II.

On cross-appeal, plaintiff contends that the trial court erred in declining to impose a duty to research binding rulings in the context of its negligence claim. We disagree.

■ Whether a particular defendant owes a legal duty to a particular plaintiff, and the scope of any duty, are questions of law. Accordingly, our review of the trial court's determination of defendant's duty to plaintiff is *de novo. Bath Excavating & Construction Co. v. Wills,* 847 P.2d 1141 (Colo.1993)

■ Determining whether to impose a duty on an actor requires a court to consider a number of factors, including the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor. *Bath Excavating & Construction Co. v. Wills,* supra; *Campbell v. Burt Toyota–Diahatsu, Inc.,* 983 P.2d 95 (Colo.App. 1998).

■ Legal duty is defined in terms of a standard of care. The source of the duty and the corresponding standard may originate from a judicial decision or a legislative enactment. Where the applicable standard of care is not within common knowledge, it must be established by expert testimony. For those practicing a profession involving specialized knowledge or skill, the applicable standard of care generally requires the actor to possess a standard minimum of special knowledge and ability and to exercise reasonable care in a manner consistent with members of the profession in good standing. *United Blood Services v. Quintana, supra.*

■ The business of customs brokers demands a sense of responsibility and skill. *Union Brokerage Co. v. Jensen,* 322 U.S. 202, 64 S.Ct. 967, 88 L.Ed. 1227 (1944). The parties agree, and we concur, that the business of customs brokerage is a profession requiring specialized knowledge and skill, as well as the exercise of judgment, at least as it applies to determining the appropriate import classification for customers' products.

Here, experts for both parties testified concerning the practice within the industry. Plaintiff's expert opined that the standard of care required periodic research of the body of binding rulings on behalf of each customer to determine if a related ruling could be used as persuasive authority to challenge the classification of each customer's products. Plaintiff's expert located the source of this standard of care in the Customs Service's proposed amendment to the federal regulations requiring that importers and agents, including brokers, "familiarize" themselves with binding rulings that govern their import transactions.

Plaintiff asserts that one of defendant's employees, who gave a seminar presentation that included discussion of the requirements of "reasonable care" as applied to brokers, affirmed its expert's view. The presentation did not explicitly refer to a duty to conduct periodic research of binding rulings, however, and at trial the employee testified that he did not intend to suggest the existence of such a duty.

Plaintiff further contends that defendant's experts agreed that brokers have a duty to stay current with the body of binding rulings.

Taken in context, however, one of defendant's experts agreed only that the standard of care for brokers requires taking action to ensure that classification entries made on behalf of a customer reflect the most current classification position of the Customs Service with respect to that customer's product. As this applies to binding rulings, only a ruling with respect to the product at issue can be relied upon to control the classification position of the Customs Service. To date, there is no binding ruling with respect to plaintiff's fax switch; plaintiff's argument centers entirely on the failure to locate rulings with respect to other products that did not control the classification of plaintiff's fax switch.

More importantly with respect to the characterization of the expert testimony, defendant's experts explicitly and emphatically denied that the applicable standard of care includes a responsibility to undertake periodic research of the body of binding rulings.

Through its experts, defendant presented a survey of all of the brokers doing business at the port of Denver, revealing that none of them had a practice of conducting periodic research of binding rulings absent a request from a customer. *See United Blood Services v. Quintana, supra* (locality rule binds professional to knowledge and skill applicable to those practicing the same profession in the same locality). By contrast, plaintiff's expert, a customs broker who does business in Florida, did not state whether the standard he found in the nonbinding proposed amendment was one actually followed by other customs brokers.

The trial court found that defendant's experts had persuasively demonstrated that imposing a duty to conduct periodic research would place an inordinate burden on brokers. One expert concluded that creating this time-consuming requirement would force brokers to raise their fees, the impact of which would be felt by all importers, while benefiting only the few whose classifications would be positively affected by locating a ruling with persuasive authority.

■ We are convinced that the relatively low foreseeability and likelihood of injury as weighed against the social utility of requiring this type of research, as well as the negative consequences of imposing a duty to research on defendant, militate against such a conclusion, at least before 1996, when the Customs Service established a workable internet web site containing searchable rulings. More to the point, we do not see a basis in the customs law or in the expert testimony for concluding that "reasonable persons recognize and agree that a duty exists." *See Bath Excavating & Construction Co. v. Wills, supra,* 847 P.2d at 1148 (citing *Greenberg v. Perkins,* 845 P.2d 530 (Colo.1993), and *University of Denver v. Whitlock,* 744 P.2d 54 (Colo.1987)).

As discussed with reference to plaintiff's fiduciary duty claim, the statutory requirements of "due diligence" and "reasonable care" are too broad, in and of themselves, to support this requirement. Likewise, we are persuaded that the correct conclusion to be drawn from the expert testimony is that such a requirement is not a part of the standard of care generally recognized within the industry.

## III.

Plaintiff alternatively contends that the duty to research was an obligation arising from a contract between the parties. Plaintiff contends that the existence of an oral agreement can be inferred by the conduct of defendant in providing brokerage services and of plaintiff in paying for those services for seven years. We reject this contention.

■ The existence of a contract is a question reserved for the fact finder. *I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882 (Colo.1986).

■ Here, the only written agreement between the parties was a power of attorney, although plaintiff also relied upon the parties' correspondence. The trial court found, with record support, that there was not enough evidence to support a finding that a contractual promise of this nature had been made. Accordingly, we will not disturb that determination on appeal.

## IV.

In view of our disposition, we need not address the parties' remaining contentions.

That part of the judgment imposing a fiduciary duty upon defendant to advise plaintiff to seek a binding ruling from the Customs Service, or alternatively, to seek one itself, is reversed. The balance of the judgment is affirmed, and the case is remanded to the trial court with directions to enter judgment in favor of defendant.

PLANK and NEY, JJ., concur.